KOS f/k/a Boks, a partnership and Secured Creditor on and for the Behalf of **SOURDOUGH FREIGHT LINES, INC.,** Appellant,

v.

**ALYESKA PIPELINE SERVICE COMPANY** acting as agent for Amerada Hess Corporation, Arco Pipe Line Company, Exxon Pipeline Company, Mobil Alaska Pipeline Company, Phillips Petroleum Company, Sohio Pipe Line Company and Union Alaska Pipeline Company, Appellee.

KOS f/k/a Boks, a partnership and Secured Creditor on and for the Behalf of **SOURDOUGH FREIGHT LINES, INC.,** Appellant,

v.

**BRITISH PETROLEUM OF ALASKA COMPANY, Appellee.**

KOS f/k/a Boks, a partnership and Secured Creditor on and for the Behalf of **SOURDOUGH FREIGHT LINES, INC.,** Appellant,

v.

**ATLANTIC RICHFIELD COMPANY,** Appellee.

No. 6278.

Supreme Court of Alaska.

Sept. 30, 1983.

Joseph W. Sheehan, Fairbanks, for appellant.

Alfred Toulon Smith, Anchorage, William H. Grady, Seattle, and Mary A. Nordale, Fairbanks, for appellee Alyeska Pipeline Service Co.

David H. Bundy, Ely, Guess & Rudd, Anchorage, for appellee Sohio Alaska Petroleum Co.

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and DIMOND, Senior Justice.*

## OPINION

DIMOND, Senior Justice.

This is an appeal from a superior court order granting the defendants partial summary judgment on the antitrust claims of the plaintiff's third amended complaint. For the reasons that follow, we affirm the superior court's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

KOS, plaintiff below and appellant herein, is a secured creditor of Sourdough Freight Lines, Inc., ("Sourdough"). Sourdough is a common motor carrier subject to regulation by both the Alaska Transportation Commission and the Interstate Commerce Commission. Between 1974 and 1978, Sourdough transported cargo to the North Slope for defendants Alyeska Pipeline Service Co. ("Alyeska"), Atlantic Richfield Co. ("ARCO") and BP Alaska, Inc. Sohio Alaska Petroleum Co. ("Sohio") is defending this case as successor in interest to BP Alaska, Inc.

Alyeska, ARCO and Sohio paid all of the original invoices and bills of lading submitted by Sourdough for its services. In 1978, however, they received readjusted or rerated billings from Sourdough claiming additional amounts due under the tariffs. They audited the supplemental billings, and in some cases determined that valid undercharges existed. For the most part, however, they decided that the additional charges were unjustified. They did not pay the disputed tariffs.

Sourdough filed suit against Alyeska alleging that Sourdough had undercharged

---

* Dimond, Senior Justice, sitting by assignment made pursuant to article IV, section 11, of the Constitution of Alaska.

Alyeska for services rendered pursuant to the applicable tariff, that Alyeska had refused to pay the revised billings, and that Alyeska had breached its contract with Sourdough. Alyeska counterclaimed that Sourdough had collected an amount in excess of the applicable tariff rate, that the tariff rates published by Sourdough were "unfair, unjust, and unreasonable," and that any determination of reasonableness was within the exclusive primary jurisdiction of the Interstate Commerce Commission and the Alaska Transportation Commission.

Sourdough amended its complaint against Alyeska, alleging the same action for breach of contract, but substituting its creditor, KOS, for Sourdough as plaintiff. KOS subsequently amended the complaint to add a second count, alleging violations of the state antitrust laws against Alyeska. The complaint was amended yet again to add as defendants Atlantic Richfield Company and the British Petroleum of Alaska Company.

KOS has drafted its antitrust claims in terms that implicate nearly every actionable provision of the Alaska antitrust statutes. On appeal, however, the only statutes at issue are AS 45.50.562 (prohibiting combinations or conspiracies in restraint of trade) and AS 45.50.564 (prohibiting monopolies). In the superior court, KOS contended that Alyeska, alone and in concert with Sohio and ARCO, engaged in a price fixing scheme to control rates for motor carrier services in northern Alaska during the period from 1974 to 1978. In support of its contention, KOS alleged the following facts: first, that the defendants jointly refused to pay Sourdough the sums due it under tariff terms, intending to establish a pricing scheme; second, that they told Sourdough they would stop doing business with it if Sourdough insisted on its interpretation of the tariff; and third, that Sourdough relied on a request by Alyeska to increase its fleet of equipment, whereupon Alyeska decided that it no longer needed the additional equipment. KOS contends that by this conduct the defendants attempted to dictate "service, rates and tariff changes" to Sourdough. KOS also alleged that the defendants further violated the antitrust laws by entering into certain agreements with other equipment leasing companies.

Alyeska, ARCO and Sohio denied all of KOS's allegations. In response to the cause of action for breach of contract, the defendants contended that they paid all charges that were due to Sourdough under any reasonable interpretation of the applicable tariffs. The superior court stayed proceedings on this claim, referring all tariff disputes to the appropriate administrative agencies. The court's order is not at issue in this appeal.

The defendants moved for summary judgment on the antitrust cause of action, contending that KOS had failed to state a claim upon which relief could be granted. This motion was granted. KOS appeals from the judgment for the defendants entered by the court.

## II. CONSPIRACY IN RESTRAINT OF TRADE: PRICE FIXING

### A. *Conspiracy Theories*

▉ We are called upon to decide whether a common motor carrier may recover treble damages for violation of AS 45.50.-562, which prohibits conspiracies to fix prices, when shippers have jointly discussed tariff terms and have refused to pay some of the same charges in bills submitted by the carrier. The classic price fixing situation involves an agreement among competing sellers to regulate the price at which they will sell their product. Competing purchasers, however, when acting in concert to affect prices, may also violate the prohibition against conspiracies in restraint of trade. *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.*, 334 U.S. 219, 235, 68 S.Ct. 996, 1005, 92 L.Ed. 1328, 1340 (1948); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940).

KOS contends, under two different theories, that the defendants conspired against

it in restraint of trade. The first theory is that Alyeska, Sohio and ARCO agreed on a common plan or course of action to refuse payment of bills submitted by KOS pursuant to the tariff. The second theory is that Alyeska, as agent for the owner corporations of the pipeline, effected a conspiracy among the oil companies to fix the price of transportation services.

KOS points to no evidence that would sustain its allegation that the pipeline owners actively conspired to withhold payment due for services rendered by Sourdough. With regard to KOS's first conspiracy theory, there is some evidence to indicate that the transportation managers of Alyeska, ARCO and Sohio did discuss questions of tariff interpretation with each other. There is also evidence from which it might be inferred that Sohio and ARCO had agreed to adopt similar reasons for refusing to pay certain items billed by Sourdough. As we have had occasion to note, however:

> [T]he existence of such a question of fact will not prevent entry of summary judgment unless the fact in issue is material. And the factual question will be considered material only if as a matter of law, assuming the factual situation to be as appellant contends, appellant would then have a basis for a claim for relief against appellee.

*Whaley v. State,* 438 P.2d 718, 720 (Alaska 1968). *See also* Alaska Civil Rule 56(c).

■ We are aware of the United States Supreme Court's admonition that summary judgment should be used sparingly in antitrust litigation. *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458, 464 (1962). When an antitrust plaintiff has arguably established a prima facie case, we agree that they should be afforded an opportunity to discover and prove the necessary supporting facts at trial. In the present case, however, there is a more fundamental reason for finding that KOS lacks a basis for its claim. Accepting KOS's allegations as true, we conclude that its claims of a conspiracy to fix prices must fail as a matter of law for lack of antitrust standing.

#### B. *Antitrust Standing*

■ Alyeska correctly observes that this case only involves disputed tariffs and simply does not involve any antitrust issues. A private litigant seeking treble damages for violation of the antitrust laws must establish that it has standing to bring suit. *Radiant Burners, Inc. v. Peoples Gas Light and Coke Co.,* 364 U.S. 656, 660, 81 S.Ct. 365, 367, 5 L.Ed.2d 358, 361 (1961). Section 4 of the Clayton Act states that "[a]ny person who shall be injured in his business or property *by reason of anything forbidden in the antitrust laws may sue therefor* ... and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." 15 U.S.C.A. § 15 (1983) (emphasis added). The language of the Alaska statute similarly limits recovery to persons injured in their business or property *by reason of a violation of the antitrust laws.*[1]

■ Until recently, establishing *some* damage resulting from an unlawful conspiracy was all that was required to establish standing to bring suit for treble damages. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 114, 89 S.Ct. 1562, 1571, 23 L.Ed.2d 129, 143 (1969). In its decision in *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977), however, the Supreme Court announced an additional standing requirement. A plaintiff must show not only the fact of injury from the alleged violation, but that the injury is "of

---

1. AS 45.50.576 states in relevant part as follows: *Suits by persons injured.* (a) A person who is injured in his business or property by a violation of AS 45.50.562–45.50.570, ... may bring a civil action (1) for damages sustained by him, and if the judgment is for the plaintiff and the trier of fact finds that the defendant's conduct was wilful, the plaintiff shall be awarded threefold the amount of damages sustained by him, plus the costs of the suit, including reasonable attorney fees.

the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Id.* at 489, 97 S.Ct. at 697, 50 L.Ed.2d at 712. In *California Computer Products, Inc. v. International Business Machines Corp.*, 613 F.2d 727 (9th Cir.1979), the Ninth Circuit succinctly analyzed antitrust standing as follows:

> This statute [section 4 of the Clayton Act] confers standing to sue only upon those persons causally injured by antitrust violations. Moreover, in order to prevail the plaintiff must prove not only injury causally linked to the asserted violation, but also that the injury is of the type the antitrust laws were intended to prevent. The plaintiff's burden of proving the former is satisfied by proof of *some* damage flowing from the antitrust violation. Satisfying the latter burden is dependent on a showing that the injury was caused by a reduction, rather than an increase, in competition flowing from the defendant's acts, since "[t]he antitrust laws ... were enacted for 'the protection of *competition* not *competitors.*' " Accordingly, the plaintiff must demonstrate that the defendant's conduct was intended to or did have some anticompetitive effect beyond his own loss of business or the market's loss of a competitor.

*Id.* at 732 (citations omitted, emphasis in original). *See also Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229 (6th Cir.1981), *cert. denied,* 454 U.S. 893, 102 S.Ct. 388, 70 L.Ed.2d 207 (1981).

▮ In the present case, there is no showing that KOS was damaged in fact by the defendants' refusal to pay the supplemental charges billed. Sourdough's damage claims are contingent upon a finding that its interpretation of the applicable tariffs was correct. All questions concerning the proper tariff interpretation have been referred by the superior court to the appropriate administrative agencies for a determination. They have yet to be decided. KOS itself concedes that its antitrust claims are contingent upon a favorable finding by the administrative agencies. It states:

> The tariff issues have now been referred to the Alaska Transportation Commission and the Interstate Commerce Commission. If defendants should prevail in their position before the Commissions then of course plaintiff would not have a cause for an antitrust violation, since defendants are not obligated to pay any more than what the appropriate tariff charge may be.[2]

▮ Moreover, even if we assume that the defendants wrongfully refused to pay charges properly billed by Sourdough, and that KOS was able to show that it was thereby harmed, we do not think that such injury is of the kind that the antitrust laws were intended to prevent. In a classic case of conspiracy to fix prices like *Socony Vacuum*, the government was concerned to prevent interference with price formation in the marketplace. There, the antitrust laws were invoked against major oil companies that had agreed to buy up surplus oil produced by independents, and so create artificial price supports for their product. The underlying rationale for preventing such price fixing agreements is the belief that unrestrained operation of supply and demand will result in a price that encourages economic competitors to become more efficient. Conversely, restricting price fluctuations through "contract, combination or conspiracy," creates inefficiencies by limiting competition. Under such a model it is the harm to competition and not

---

**2.** Assuming that the defendants did not pay the proper tariff, harm to KOS still has not been established. Sourdough Freight Lines is the firm alleged to have suffered harm as a result of antitrust violations by Alyeska, ARCO and Sohio. KOS is Sourdough's secured creditor. The extent of any harm to it is even more speculative than the measure of Sourdough's damages.

Sohio argues that the Security Agreement between KOS and Sourdough does not give KOS an interest in Sourdough's antitrust claims and that, absent an express assignment of Sourdough's interest, KOS is not the real party in interest in this suit. Because of our disposition of this case, we need not reach this issue.

to individual competitors that the antitrust laws were designed to prevent. *See Brunswick Corp. v. Pueblo Bowl-O-Mat., Inc.*, 429 U.S. at 488, 97 S.Ct. at 697, 50 L.Ed.2d at 712, quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510, 533 (1962).

In order to demonstrate antitrust standing, KOS must make a prima facie showing that the defendants' alleged acts were intended to or did have an effect on competition as a whole within the motor carrier industry in the relevant geographical area. It has not done so. The simple tariff dispute between Sourdough and the defendants was not intended to and did not affect competition within the motor carrier industry in northern Alaska.

### C. *Price-fixing Theories*

KOS charges that Alyeska, Sohio and ARCO agreed to "fix" prices when they declined for the same reasons to pay some of the same items billed by Sourdough. The price for Sourdough's services, however, was already "fixed" by the tariff. Once published, "tariffs remain effective until suspended or changed in accordance with specified procedures, and so long as they are effective carriers are forbidden to charge or collect any rate other than that provided in the applicable tariff." *T.I.M.E., Inc. v. United States*, 359 U.S. 464, 465, 79 S.Ct. 904, 905, 3 L.Ed.2d 952, 954 (1959) (footnote omitted). *See also Walsky Construction Co. v. Sea-Land Services, Inc.*, 577 P.2d 241, 243 (Alaska 1978).[3]

Any injury suffered by Sourdough and KOS must be measured by whatever difference there may be between the amounts due under the published tariff and the amounts paid. A consensus among shippers on the proper interpretation of a tariff does not operate to change the tariff itself. Discussions between Alyeska, Sohio and ARCO that may have led to an agreement concerning the interpretation and application of Sourdough's tariff would not constitute price fixing and would not violate the prohibition against restraints of trade set forth in AS 45.50.562. For this reason, KOS has no claim against the defendants for price fixing, whether based on a theory of intracorporate conspiracy by the pipeline owners or on a theory of conspiracy between Alyeska, ARCO and Sohio. If KOS has been injured by the defendants, its proper remedy lies in a suit for damages to recover any monies due to it under the tariff.

### III. UNLAWFUL MONOPOLY

KOS alleges that during the pipeline construction period, Alyeska utilized ninety percent of the common carrier surface traffic and nearly ninety percent of Sourdough's services. KOS further alleges that, in combination with ARCO and Sohio, Alyeska held monopoly, or to be more precise, monopsony[4] power in the transport market in northern Alaska. KOS contends that Alyeska used this monopsony power to "effectuate a pricing scheme" in violation of AS 45.50.562 and AS 45.50.564.[5]

**3.** Adherence to prices set by tariff is mandated by federal and state statutes. 49 U.S.C. § 10761(a) (Supp. IV 1980) states that "a carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission ... shall provide that transportation or service only if the rate for the transportation or service is contained in a tariff that is in effect ...."

AS 42.10.310, entitled "Adherence to tariffs," provides in relevant part that:
(a) No common carrier may, directly or indirectly, demand or receive a greater or lesser rate for a service provided or to be provided by it or extend privileges or facilities for transportation affecting the value of the trans-

portation than those specified in its tariff and filed in the manner provided in this chapter.

**4.** Monopoly refers to a market in which there is one seller, while monopsony refers to a market in which there is a single purchaser. P. Samuelson, Economics at 588 (10th ed. 1976).

**5.** The arguments offered by KOS in support of its claim that the defendants abused their monopsony power consist of unsupported allegations. This alone is sufficient reason to uphold the summary judgment entered by the superior court. In accordance with Alaska Civil Rule 56(e),
[w]hen a motion for summary judgment is made and supported as provided in this rule,

Although Alyeska attempts to defend itself from a perceived charge of unlawful monopolization, the thrust of KOS's claim is not that Alyeska is a monopoly in violation of AS 45.50.564, but that Alyeska used its economic power to dictate prices. KOS argues that "[w]hen Alyeska, individually or together with ARCO and Sohio, uses its dominant—monopoly market position to deviate from the authorized tariff, it is effectively price fixing . . . ."

■ This argument is subject to the same criticism as the allegations of a price fixing conspiracy. First, KOS has made no showing that the defendants did in fact "deviate" from the authorized tariff. The correct tariff interpretation remains to be determined. Second, KOS does not maintain that Sourdough was ever inclined to or did alter any tariff as a result of shipper demands. At most, Sourdough may have decided that it would not insist upon its interpretation of certain items in the existing tariff. It was obligated by law, however, to bill and collect for its services according to the tariff.[6] Accordingly, we reject KOS's argument that the defendants used their economic power to dictate prices in violation of the antitrust laws.

## IV. GROUP BOYCOTT

KOS maintains that "[t]he owner oil companies either individually, or through their agent Alyeska, or Alyeska as a monopoly individually or together with ARCO and Sohio engaged in unlawful conduct . . . by threatening to exclude Sourdough from the TransAlaska Pipeline market if it did not accede to Alyeska's, ARCO's and Sohio's pricing scheme." KOS argues that this conduct amounts to a group boycott, prohibited under section 1 of the Sherman Act.

■ KOS's argument is based upon an erroneous interpretation of the theory of group boycott. A group boycott occurs when competitors combine to exclude a would-be-competitor by threatening to withhold their business from firms that deal with the potential competitor. *See, e.g., United States v. General Motors Corp.,* 384 U.S. 127, 86 S.Ct. 1321, 16 L.Ed.2d 415 (1966); *Fashion Originators' Guild v. Federal Trade Commission,* 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949 (1941). To illustrate, a group of wholesalers attempting to exclude another competing wholesaler might agree that they would not do business with any supplier who provides the competing wholesaler with goods, or with any retailer who purchases from the wholesaler.

Sourdough does not compete with Alyeska, ARCO or Sohio, or they with Sourdough. It is therefore impossible for the defendants to have combined to boycott Sourdough.

■ Furthermore, KOS does not argue that KAPS and Mukluk, common carriers in competition with Sourdough, combined to threaten Alyeska, Sohio or ARCO with the loss of their services if the defendants continued to do business with Sourdough. In an affidavit, Eddie O'Rear, president of Sourdough Freight Lines, states that Sourdough lost its position as the exclusive provider of services to Alyeska at its North Star Terminal when Alyeska decided to use KAPS instead. This claim, however, assuming it to be true, still does not sustain a cause of action for group boycott. Although it is possible for a single competitor to precipitate a boycott, *see Klor's, Inc. v. Broadway-Hale Stores, Inc.,* 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959), there must be an element of economic coercion by the plaintiff's competitor against a firm seeking to do business with the plaintiff. KOS does not show, or even allege, that KAPS excluded Sourdough from the North Star Terminal by threatening to cease business relations

---

an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

If he does not so respond, summary judgment, if appropriate, shall be entered against him.

**6.** *See* note 3 *supra.*

with Alyeska. Clearly, KOS has not stated a viable cause of action for group boycott.

## V. MISREPRESENTATION

Sourdough purchased thirty highway tractors in response to Alyeska's request to provide it with a quantity of tractors capable of hauling double-jointed pipe. The parties did not enter into a contract, nor did Alyeska provide a letter of commitment. After Sourdough had executed a promissory note and obligated itself to purchase the equipment, Alyeska determined that it would not be necessary to use these tractors.

It is not clear what cause of action KOS claims these facts give rise to. KOS contends that this amounted to some form of price fixing, but whether it is a price fixing theory based on a conspiracy among the pipeline owners is not apparent. There is no evidence of such a conspiracy in the record. KOS specifically excludes this "price fixing" claim from its allegations that the defendants abused their monopoly power.

■ These facts may present a cause of action for misrepresentation; they do not, however, give rise to an action under AS 45.50.562. Accordingly, this issue did not preclude the superior court from granting summary judgment to the defendants on the antitrust claims.

## VI. CONTRACTS IN RESTRAINT OF TRADE

KOS contends that Alyeska violated the antitrust laws by entering into certain agreements with other equipment leasing companies. The exact nature of KOS's claim is unclear. It appears, however, that KOS claims that the agreements operated to restrain trade, in violation of AS 45.50.-562.

KOS does not maintain, and the record does not support, any inference that either of the equipment leasing companies that entered into agreements with Alyeska pressed Alyeska not to do business with Sourdough as a condition of entering into the agreements. Thus, there is no claim for restraint of trade based on a group boycott theory.

The substance of KOS's claim seems to be that the increase in the supply of tractors resulting from Alyeska's agreements with the leasing companies worked to the detriment of Sourdough by forcing it to be more price competitive to respond to the greater supply of trucks and the resulting lower demand for its own services. Even assuming these allegations to be true, this is not the kind of activity that the antitrust laws were designed to prevent because Alyeska's agreements enhanced, rather than harmed, competition.

The record indicates that Alyeska discussed the rates that the leasing companies would charge for the new equipment. There is no evidence, however, that Alyeska "dictated" these rates. KOS is under the misapprehension that any agreement that affects price is within the definition of price fixing and constitutes a restraint of trade. If this were so, a grocer who sells a loaf of bread and a customer who purchases it would contravene the antitrust laws when they fixed a price for the transaction. Antitrust laws are only concerned with those agreements that *restrict* the supply of goods and services and *reduce* competition.

■ The increased supply of tractors resulting from Alyeska's agreements with other leasing companies required Sourdough to be more price competitive. It is understandable that Sourdough would have preferred motor carrier services to remain in short supply. This would have enabled it to charge higher rates for its same services. We conclude, however, that the leasing agreements did not violate the antitrust laws.

For the foregoing reasons, the judgment of the superior court granting partial summary judgment is AFFIRMED.