ALOHA LUMBER CORPORATION,
Appellant,

v.

UNIVERSITY OF ALASKA, Board of Regents, Statewide Office of Land Management, and Wasser & Winters Company, Appellees.

Aloha Lumber Corporation, Appellant,

v.

University of Alaska, Board of Regents, Statewide Office of Land Management, Wasser & Winters Company, and State of Alaska, Appellees.

Nos. S–8346, S–8445.

Supreme Court of Alaska.

Dec. 30, 1999.

Rehearing Denied March 14, 2000.

C.R. Kennelly, Stepovich, Kennelly & Stepovich, P.C., Anchorage, Stephen P. Ryder, Stephen P. Ryder, P.S., Seattle, Washington, and Michael E. Gossler, Montgomery, Purdue, Blankinship & Austin, P.L.L.C., Seattle, Washington, for Appellant.

James D. Linxwiler, Michael S. McLaughlin, and Barbara F. Fullmer, Guess & Rudd, Anchorage, for Appellees the University of Alaska, the University of Alaska Board of Regents, and the University of Alaska Statewide Office of Land Management.

Patrick B. Gilmore, Atkinson, Conway & Gagnon, Anchorage, for Appellee Wasser & Winters Company.

Brian Bjorkquist, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee the State of Alaska.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

The University of Alaska rejected as non-responsive Aloha Lumber Corporation's bid for university timber rights. Aloha challenges the university's actions in two consolidated appeals. Because Aloha did not provide requested information material to evaluating its proposal, we hold in Case No. S–8346 that the university reasonably rejected Aloha's proposal as non-responsive. This conclusion moots Aloha's collateral attacks on the sale in Case No. S–8346. In Case No. S–8445 we reject Aloha's breach of trust claims on the merits and its antitrust claims for lack of standing. And because the Unfair Trade Practices and Consumer Protection Act does not apply here, we affirm the dismissal of Aloha's claims under that Act in Case No. S–8445. Because the superior court did not find that Aloha's claims were vexatious or brought in bad faith in Case No. S–8346, we reverse the awards of full attorney's fees against Aloha in that case and remand.

### II. FACTS AND PROCEEDINGS

#### A. Facts

In December 1995 the University of Alaska State Office of Land Management awarded a contract for Gulf Coast Timber Sale # 1 to Wasser & Winters Company (Wasser). The timber sale involved the sale of university timber rights on Cape Yakataga. The timber rights were part of the university land trust created by the federal government for the university's exclusive use and benefit.[1] Because the sale area is very remote, has limited access and infrastructure, and is subject to extensive environmental controls, the university's land management office did not offer the timber sale on a competitive bid basis. Instead it issued a request for proposals (RFP) soliciting proposals from qualified individuals or firms.

The RFP outlined the land management office's goals for the timber sale: to maximize revenue, ensure appropriate harvesting of the timber and future regeneration, and meet all legal and regulatory commitments and obligations. To guarantee that the land management office met these goals, the RFP stated that the land management office sought to award the contract to an individual or firm with:

> *proven* experience harvesting timber in remote, preferably Alaskan locations, involving difficult logistical support and harsh climactic and marine conditions; a high level of operational efficiency; the financial capability to properly and timely complete

---

1. *See State v. University of Alaska,* 624 P.2d 807, 810–13 (Alaska 1981) (detailing history of university land trust).

the project; extensive experience marketing domestic and export logs; and a commitment to environmentally sound logging practices.

The RFP preserved the possibility of a negotiated sale, in which the land management office would not be obligated to accept the highest dollar offer but could award the contract to any responsive and responsible proposer that offered satisfactory compensation, so long as the proposal served the university's best interests.

The RFP also notified potential proposers that it was subject to a right of first refusal due to "previous contractual obligations made by the University." In 1993 Wasser had purchased the university's timber rights at White River in the Cape Yakataga area. In connection with that purchase (the "White River sale"), Wasser secured a right of first refusal through 1997 of all timber rights the university might acquire at Cape Yakataga. Wasser's right of first refusal encompassed the 1995 timber sale now in dispute.

Four companies submitted proposals in response to the timber sale RFP: Aloha; Silver Bay Logging, Inc.; Sealaska Timber Corporation; and Rayonier, Inc. Because Aloha and Silver Bay made the highest financial offers, the land management office carefully scrutinized both proposals.

To enable the land management office to evaluate a proposer's ability to meet the land management office's goals, the RFP expressly required proposers to provide certain information (i.e., "Information Which Must Be Contained in a Proposal"). It also defined three specific categories for rating proposals: "responsive," "non-responsive," and "deficient."

The land management office also retained Clare Doig, a professional forester with Forest and Land Management, Inc., to independently review the two highest-valued proposals and to determine responsiveness and responsibility. Doig concluded that Aloha's proposal was "non-responsive"[2] based on its failure to provide (1) concrete operating and development plans, (2) evidence that it had ever undertaken a similar project, and (3) current financial information. Moreover, he noted that Aloha did not own or control the facilities or equipment necessary to complete the project and did not demonstrate that it had the financial resources to meet the requirements of the RFP.

In contrast, Doig determined that Silver Bay's proposal was responsive and concluded that Silver Bay had "a proven track record of experience with similar projects, . . . the personnel, organizational structure, equipment, and financial ability to successfully complete [the] project." Doig recommended awarding the contract to Silver Bay despite Aloha's significantly higher financial offer.

Martin Epstein, the land management office director, and Richard Rogers, a land management office staff member, evaluated the proposals. Epstein and Rogers concurred with Doig's conclusions regarding Aloha's proposal and rejected it as non-responsive. They did not ask Aloha to supplement its proposal because they believed that doing so would result in the university essentially writing the operating plan on Aloha's behalf, an opportunity not extended to other proposers. In their view, such an opportunity would have given Aloha competitive advantage, compromising the integrity of the RFP process.

In contrast, Epstein and Rogers determined that Silver Bay's proposal was "deficient" in several minor respects.[3] At Rogers's solicitation, Silver Bay provided the missing information.[4] After evaluating the

2. The RFP defined "non-responsive" as: " Any proposal which modifies or fails to conform in any material respect to an essential requirement of the RFP. A non-responsive rating at any stage of the evaluation will eliminate a proposal from further consideration."

3. The RFP defined "deficient" as:

Any proposal which fails to supply all information necessary to make a determination as to whether the proposal is responsive or non-responsive but which appears reasonably likely to become responsive with additional information clarifying the proposal and/or a proposal which is not non-responsive and, with minor modifications, would be acceptable to the University.

4. Silver Bay's proposal was deficient because it had not verified the receipt of the three amendments to the RFP, it had not included an equip-

information, Epstein and Rogers determined that Silver Bay's proposal was responsive.

The land management office then issued a notice of intent to award the timber sale contract to Silver Bay, subject to Wasser's right of first refusal. Shortly thereafter, Wasser exercised its right of first refusal and entered into a contract with the university for the timber rights to the timber sale.

### B. Proceedings in S–8346

As permitted by the RFP, Aloha protested the contract award, arguing that the land management office erred in rating Aloha's proposal as non-responsive. The director of the land management office upheld its determination.

Aloha appealed to the university's Chief Procurement Officer, raising twenty-two issues. The appeal principally questioned the propriety of the land management office's evaluation of Aloha and Silver Bay's proposals, the propriety of denying Aloha the opportunity to supplement its proposal while allowing Silver Bay to supplement, and the validity of Wasser's right of first refusal.

Both sides presented arguments and witnesses at a five-day hearing, and submitted affidavits and deposition testimony. The hearing officer found against Aloha on all issues and recommended affirming the land management office's award of the timber sale contract to Wasser. The university adopted the hearing officer's recommended decision.

Aloha appealed to the superior court, which affirmed the hearing officer's decision, finding it supported by the facts and reasonably based in the law. The court held that the land management office properly rejected Aloha's bid as non-responsive because Aloha failed to meet the RFP's explicit requirement that proposers provide detailed information concerning their timber harvesting plans for the timber sale. The court refused to reach the collateral issues Aloha raised because the court determined that the land management office's valid rejection of

ment list in its proposal, and it had not identified its proposed marketer.

5. See Handley v. State, Dep't of Revenue, 838 P.2d 1231, 1233 (Alaska 1992).

Aloha's proposal rendered them moot. Because the superior court found that Aloha's claims on appeal were frivolous, it awarded the university and Wasser full attorney's fees and costs in the amounts of $185,643 and $20,076, respectively, under Alaska Appellate Rule 508. Aloha appeals these rulings.

### C. Proceedings in Case No. S–8445

While Aloha's superior court administrative appeal was pending, Aloha filed a separate complaint against the university, the state, and Wasser collaterally attacking the timber sale. Aloha accused the university and Wasser of violating state antitrust laws and engaging in unfair competition. It also claimed that the university and the state had breached their fiduciary duties under the trust.

The university, the state, and Wasser moved to dismiss Aloha's claims under Alaska Civil Rule 12(b)(6). The superior court dismissed Aloha's claims on the same day it denied Aloha's administrative appeal. It also found that Aloha's claims were frivolous; citing Alaska Civil Rules 82(b)(2) and (b)(3), it awarded the university and the state full attorney's fees and costs of $53,074 and $37,-466, respectively. Aloha appeals these rulings.

## III. DISCUSSION

### A. Case No. S–8346

1. *The land management office had a reasonable basis for rejecting Aloha's proposal for the timber sale.*

In reviewing the merits of an administrative determination, we give no deference to the decision of a superior court acting as an intermediate court of appeal.[5] Because the university's decision to reject Aloha's proposal as non-responsive is a contracting decision involving agency expertise, we review its decision under the deferential "reasonable basis" standard.[6]

6. *Id.; see also Chris Berg, Inc. v. State, Dep't of Transp.,* 680 P.2d 93, 94 (Alaska 1984).

■ Aloha argues that the land management office arbitrarily and capriciously rejected its proposal as non-responsive. In support it cites *Chris Berg, Inc. v. State, Department of Transportation*,[7] in which we equated non-responsiveness with a "material variance" from the terms of the bid.[8] Aloha maintains that its proposal is responsive under *Chris Berg* because the alleged defects in its proposal did not materially vary the terms of the RFP. Aloha notes that it was still bound by the RFP's terms even if it failed to provide sufficient detail as to how it intended to comply with those terms.

We reject Aloha's argument because *Chris Berg* involved a competitive bidding process in which, under the circumstances of that case, price was the only information essential to evaluating the bid. We expressly noted that the responsibility of the bidder was not at issue.[9] That situation is not present here.

Price was not the only factor relevant to the timber sale. The land management office director stated in an affidavit that the information requested by the RFP was necessary to "determine whether a proposer had the understanding, capability, experience and willingness to properly harvest [the timber sale] timber in a manner which would protect the University's long term interests." For example, the timber sale RFP expressly required that proposals detail the proposer's conceptual operating plan, including at a minimum a description of the proposer's logging and transportation methodology and equipment; an outline of the proposer's methodology for meeting the applicable regulations; the proposer's management and organizational plan; the proposer's estimated timeline; and a description of the proposer's methodology for controlling and suppressing fires.

Although Aloha did not submit this information with its proposal, Silver Bay did. Aloha's failure made it impossible for the land management office to compare Aloha's proposal with other proposals. This is why proposals for public contracts must substantially conform with all requirements contained in the RFP.[10]

■ Aloha claims that the level of detail the land management office ultimately required of proposals for the timber sale did not comport with Aloha's prior experience with the land management office and with the advice and instructions the land management office personnel gave to Aloha. Aloha therefore argues that the land management office is estopped from applying a higher standard to Aloha in evaluating Aloha's timber sale proposal. We disagree.

Aloha's experience in a prior RFP involving a different timber sale is irrelevant to determining responsiveness under this timber sale RFP. The timber sale RFP expressed the requirements and criteria upon which proposals would be evaluated. It did not refer to prior RFPs or imply that the university's prior practices would control the timber sale.

Moreover, the parties contested the substance of Aloha's conversations with the land management office personnel at the administrative hearing. The hearing officer reviewed the evidence and rejected Aloha's assertion that the conversations altered the RFP requirements. The hearing officer concluded that a telephone conversation may have occurred in which land management office staff member Rogers, Aloha consultant Abrahamson, and Aloha president Roderick discussed the subject of the RFP requirements. But he found that

> there was insufficient evidence, particularly in view of inconsistent versions of the conversation as appear in the Roderick affidavit, and his testimony at the hearing, and the affidavit and deposition of Abrahamson, to establish by a preponderance of the evidence that Mr. Rogers represented . . . to Mr. Roderick . . . in any clear terms upon which he could reasonably rely, that Aloha need not comply with any requirements of the [timber sale] RFP, or modi-

**7.** 680 P.2d 93 (Alaska 1984).

**8.** *Id.* at 94.

**9.** *See id.* at 94 n. 5.

**10.** *See King v. Alaska State Hous. Auth.*, 512 P.2d 887, 892 (Alaska 1973).

fied those requirements in any material respect.

On appeal, Aloha does not contest the hearing officer's finding. The affidavits and deposition testimony that the hearing officer relied on substantially support his conclusion. In light of this factual finding, Aloha cannot argue that the land management office orally modified or waived any requirements of the timber sale RFP.

■ Aloha further argues that even if its proposal was non-responsive, when the university elected to negotiate with Silver Bay and to permit it to supplement its proposal, the rule of equality in public contracting required the land management office to afford Aloha the same opportunities.

■ The hearing officer concluded that the land management office did not treat Aloha unfairly when it denied Aloha the right to supplement its proposal. We agree. Agencies must treat all proposers equally when determining whether bids are responsive, deficient, or non-responsive. But the law does not require that a proposer be permitted to supplement a non-responsive proposal because the agency has permitted another proposer to supplement a deficient proposal.[11]

Aloha's proposal omitted substantive information expressly requested by the RFP and essential to an evaluation under the stated criteria. The land management office was consequently not required to solicit the missing information from Aloha. As the land management office concluded, such a solicitation likely would have resulted in the land management office effectively writing Aloha's proposal. The land management office designed the RFP to ensure that the timber sale contract would be awarded to a proposer capable of meeting the university's best interests. As we stated in *McBirney and Associates v. State*,[12] "[t]he requirement of public bidding is for the benefit of property holders and taxpayers, and not for the benefit of the bidders."[13]

The RFP specified the standard for determining responsiveness. Aloha did not meet the standard. We conclude that the land management office did not err in rejecting Aloha's proposal as non-responsive.

2. *Aloha's other arguments do not establish grounds for invalidating the timber sale.*

■ Aloha argues that the university violated Aloha's right to procedural due process because the hearing officer lacked subpoena power. It asserts that "the absence of subpoena power precluded effective preparation and presentation of the facts by Aloha." But Aloha does not specify what evidence it was unable to obtain as a result or how that evidence might have changed the hearing officer's decision. Further, Aloha could have requested a trial de novo in the superior court or, at the least, subpoenaed witnesses and supplemented the record in the superior court.[14] But Aloha made no such request.

The superior court, in reviewing the university's procedures for handling bid protests in the timber sale, concluded that those procedures "conform[ed] to our basic understanding of due process as articulated in [*Sisters of Providence v. State*, 648 P.2d 970, 978 (Alaska 1982)]." We agree. As noted by the hearing officer, "the parties were both given remarkably broad latitude in examining and cross-examining witnesses, making arguments, injecting comments and fully exploring every issue with every witness that could possibly relate to the range of factual

**11.** See, e.g., *Parcel 49C Ltd. Partnership v. United States*, 31 F.3d 1147, 1151 (Fed.Cir.1994) (requiring government to "consider fairly and honestly all responsive bids"); *cf. Alaska Movers Ass'n v. Brown*, 445 F.Supp. 363, 364 (D.D.C. 1987) (granting all parties equal opportunity to seek government contracts, but not requiring that government permit non-responsive proposers to supplement their proposals).

**12.** 753 P.2d 1132 (Alaska 1988).

**13.** *Id.* at 1136 (quoting *Gostovich v. City of West Richland*, 452 P.2d 737, 740 (Wash.1969)).

**14.** See Alaska R.App. P. 609(b) (granting superior court discretion to hold trial de novo in whole or in part in appeal from administrative agency). *See also State v. Lundgren Pac. Constr. Co.*, 603 P.2d 889, 895 (Alaska 1979) (holding that right to trial de novo in superior court is created if administrative adjudicative procedure does not afford due process).

and legal issues, under the most broadly construed view of those issues." Aloha was not denied due process in the administrative proceeding.

Aloha also argues that the land management office treated it unfairly by making an assessment of Aloha's responsibility. The land management office conducted a due diligence review of the public record in Washington for deeds, records, filings, and litigation involving Aloha and its principals. Aloha charges that this investigation tainted the evaluation process. Because we conclude that the land management office did not err in rejecting Aloha's proposal as non-responsive, the "fairness" of any investigation into Aloha's responsibility is irrelevant and moot.

■ Aloha contends that Wasser's right of first refusal violated federal and state law and university regulations and breached the trust. Aloha also alleges that the university lacked jurisdiction to adjudicate its bid protest. Because we conclude that the land management office did not err in rejecting Aloha's proposal as non-responsive, these issues are moot and we decline to reach them.[15]

### B. *Case No. S-8445*

■ We review de novo a superior court decision dismissing a complaint under Alaska Civil Rule 12(b)(6), taking all factual allegations in the complaint as true.[16]

#### 1. *Aloha has standing to raise breach of trust claims against the state.*

■ Aloha asserts that the state breached its duties as trustee by transferring the ownership and management of the trust from the State of Alaska to the university through the 1983 Settlement Legislation. As a result, Aloha asks us to invalidate the Settlement Legislation, void the transfer of lands to the university, recover all assets improperly disposed of, and reconstitute the trust. Presumably this would invalidate the university's award of the timber sale contract to Wasser.

■ The university argues that Aloha does not have standing to raise breach of trust claims against the state. We note that Aloha is not a beneficiary of the trust, nor is it a student, potential student, or a part of the university. Under traditional notions of trust law, persons who are not trust beneficiaries but who would nonetheless obtain an advantage from enforcing a trustee's duty to a beneficiary, as would Aloha here, cannot maintain an action to assert trust duties.[17] But we agree with Aloha's assertion that, as a citizen-taxpayer, it had standing sufficient to assert the breach of trust claims.[18] It is difficult to imagine a person more likely to be an appropriate party to raise the issues Aloha raises. And the issues themselves, relating to disposition of state resources, are of substantial general importance. Aloha has sufficient economic interest to assure that it is not a sham plaintiff with no true adversity of interest.[19]

#### 2. *Did the university breach the trust by granting a right of first refusal to Wasser?*

■ Aloha claims that the right of first refusal was a breach of trust because it conferred a special benefit on Wasser at the expense of the beneficiary, the university. But Aloha does not explain how the right of first refusal injured the university.

---

15. We may consider whether or not an issue is moot even if the parties do not argue mootness. *See City of Valdez v. Gavora, Inc.,* 692 P.2d 959, 960 n. 2 (Alaska 1984); *Johansen v. State,* 491 P.2d 759, 761 (Alaska 1971).

16. *See Kollodge v. State,* 757 P.2d 1024, 1025–26 (Alaska 1988).

17. *See* Restatement (Second) of Trusts § 200 cmt. c, at 440 (1959); *see also* 3 Austin W. Scott & William F. Fratcher, *Scott on Trusts* § 200 (4th ed.1988); *Sergeson v. Delaware Trust Co.,* 413 A.2d 880, 882 (Del.1980) (denying standing to enforce trust to persons who were not beneficiaries of private trust and merely sought to purchase corporate stock from trust); *Thompson Coal Co. v. Pike Coal Co.,* 412 A.2d 466, 469 (Pa.1979) (adopting rule in Restatement (Second) Trusts § 200).

18. *See Baxley v. State,* 958 P.2d 422, 428 (Alaska 1998) (holding citizen-taxpayer had standing where case was of public significance and plaintiff was " 'appropriate' party to bring the case").

19. *See id.*

A trustee enjoys the discretion to make decisions regarding the disposition of the trust corpus, provided that he or she acts prudently.[20] He or she is not obligated to accept the highest offer, if there are advantages to accepting the offer of another bidder. He or she cannot, however, direct benefits to non-beneficiaries at the expense of the beneficiaries.[21]

The university argues that the right of first refusal was in the long-term financial interest of the trust. The hearing officer agreed with the university, finding that "the record on appeal, taken as a whole, does not support Aloha's contention, that the University breached its trust obligations ... particularly since the right of first refusal did not preclude the University from considering and accepting a proposal which would be to the University's greatest advantage." Aloha provides no evidence undermining this finding. Therefore, we reject Aloha's breach of trust argument.

### 3. Did the university breach the trust by refusing to negotiate with Aloha?

Aloha contends that the university breached its trust duty to obtain the maximum economic gain possible because it failed to negotiate with Aloha, the highest bidder.

The university argues that because of the unique nature of the timber sale, there were advantages to considering factors other than the amount of the financial offer. "A high dollar figure could not overcome operating difficulties in remote, mountainous terrain, could not make an otherwise inexperienced operator into a suitable operator, and could not ensure compliance with the strict environmental and other land and water protections."

The hearing officer rejected Aloha's claim. We are not persuaded that he erred in doing so. As we note above, a trustee has discretion to make decisions regarding the disposition of the trust corpus.[22] Aloha does not contend that the university awarded the timber sale contract for less than fair market value. The university's arguments for considering criteria other than the financial offer to protect the university's best interests are persuasive given the unique circumstances surrounding this timber harvest. Therefore, we conclude that the trust did not require the land management office to negotiate with the highest bidder.

### 4. Aloha does not have standing to maintain a suit against the university or Wasser for violations of Alaska's antitrust laws.

Alaska's antitrust laws forbid contracts, conspiracies, monopolies, or combinations in restraint of trade.[23] Aloha alleges that the university and Wasser violated these laws by fixing the prices of the White River sale and the timber sale, monopolizing the facilities at Cape Yakataga so as to prevent others from competing for timber rights in that area, unreasonably restraining trade and refusing to deal with competitors by agreeing to a right of first refusal on future timber sales, and colluding to treat proposers in the timber sale unfairly.

The superior court dismissed Aloha's antitrust claims against the university because it determined that the university is an entity of the state and therefore is not a "person" to which Alaska's antitrust statutes apply. The liability of the state under its antitrust laws is a question of first impression in this court. It is not answered—directly or indirectly—by the antitrust statutes themselves,[24] nor is

---

20. *See* Restatement (Second) of Trusts § 187 (1959); *Baxley,* 958 P.2d at 434. We have held that the law of private trusts applies to the University land trust at issue here. In *State v. University of Alaska,* 624 P.2d 807, 813 (Alaska 1981), we stated that "private trust law principles are to apply to federal land granted to the states for school purposes." *Cf. State v. Weiss,* 706 P.2d 681, 683 n. 3 (Alaska 1985) (applying common law principles of private trust law to public trust created by federal grants of land to State of Alaska in trust for benefit of mentally ill).

21. *See County of Skamania v. State,* 685 P.2d 576, 580 (Wash.1984).

22. *See supra* Part III.B.2.

23. *See* AS 45.50.562–.596.

24. *See id.*

the legislative history conclusive.[25] But we need not resolve this question here because Aloha lacks standing to raise antitrust claims against the university and Wasser.

■ A private litigant seeking damages for violation of the antitrust laws must establish that it has standing to bring suit.[26] To establish standing, a plaintiff must allege an injury that is causally related to the antitrust violation and that the injury is of the type the antitrust statutes were intended to prevent.[27]

In this case, Aloha does not show that the university's or Wasser's allegedly anti-competitive conduct caused damage to Aloha. Aloha's damage claims, and consequently its standing, are contingent upon a finding that "but for" the defendants' allegedly anti-competitive conduct it would have received the timber sale contract. But, given our disposition in Case No. S–8346, we cannot make such a finding. Aloha's failure to submit a responsive proposal, not the defendants' allegedly anti-competitive conduct, prevented Aloha from receiving the timber sale contract.

Aloha does not directly allege that the antitrust violations allegedly committed by the university or Wasser caused Aloha to submit a non-responsive proposal. At best, the complaint indicts the evaluation process as a "sham" and suggests that the university unfairly rejected Aloha's proposal. The hearing officer addressed identical allegations by Aloha in Aloha's administrative challenge to the timber sale award. The hearing officer found that the university treated Aloha fairly throughout the evaluation process. He dismissed Aloha's charges that the evaluation process had been "tainted" by Clare

Doig's independent investigation into Aloha's responsibility. He also agreed with the land management office's conclusion that Aloha's proposal was non-responsive. As did the superior court, we upheld the hearing officer's findings of fact and conclusions of law on the responsiveness issue in Case No. S–8346.[28]

■ Aloha cannot now relitigate the responsiveness of its proposal. The determinations of administrative adjudications are given preclusive effect in later court proceedings.[29] Collateral estoppel bars relitigation of an issue between two parties when the identical issue was resolved by a final judgment in a prior proceeding involving the same parties or a party in privity with a party to the first action.[30] All three elements of collateral estoppel are present. The hearing officer concluded that Aloha's proposal was non-responsive, thus determining the identical issue which Aloha would have to relitigate in this case to establish standing. His conclusion regarding Aloha's responsiveness was essential to his final judgment. Although the administrative adjudication involved Aloha and the university, the benefits of collateral estoppel extend to Wasser because Wasser is in privity with the university as to this issue.

■ Our general conclusion that the hearing officer's findings should carry preclusive effect does not end the inquiry. "The preclusive use of prior administrative findings must always be fair. Fairness at a minimum requires that the administrative procedure entailed 'the essential elements of adjudication.' "[31]

Aloha argues that the administrative procedure was fundamentally unfair because it

**25.** *See, e.g.,* 1975 Senate Journal 598–99; House Judiciary Comm. (Feb. 19, 21, 27, Mar. 28, Apr. 19, 1975); Senate Judiciary Comm. (Mar. 21, 25, 1975).

**26.** *See KOS v. Alyeska Pipeline Serv. Co.,* 676 P.2d 1069, 1073 (Alaska 1983).

**27.** *See id.* at 1073–74.

**28.** *See supra* Part III.A.

**29.** *See Calhoun v. State, Dep't of Transp. & Pub. Facilities,* 857 P.2d 1191, 1195–96 (Alaska 1993); *Colville Envtl. Servs., Inc. v. North Slope Bor-*

*ough,* 831 P.2d 341, 345 n. 4 (Alaska 1992); *Jeffries v. Glacier State Tel. Co.,* 604 P.2d 4, 8 (Alaska 1979). *See also* Restatement (Second) of Judgments § 83 (1982).

**30.** *See McGee v. McGee,* 974 P.2d 983, 993–94 (Alaska 1999); *State v. United Cook Inlet Drift Ass'n,* 895 P.2d 947, 950–51 (Alaska 1995).

**31.** *Johnson v. Alaska Dep't of Fish & Game,* 836 P.2d 896, 908 (Alaska 1991) (quoting Restatement (Second) of Judgments § 83(2) (1982)).

denied Aloha the right to engage in third-party discovery and to subpoena witnesses. We addressed an identical challenge by Aloha to the administrative procedure in Case No. S-8346 and held that the administrative procedure did not deny Aloha due process.[32] We therefore conclude that it is fair to use the hearing officer's findings to preclude relitigation of Aloha's responsiveness.

■ Because Aloha lacks standing to raise antitrust claims against the university and Wasser, we affirm the superior court's decision to dismiss those claims.[33]

5. *The Unfair Trade Practices and Consumer Protection Act does not apply to the timber sale.*

■ Aloha alleges that the 1993 White River sale and the 1995 timber sale were unfair and anti-competitive acts that violated Alaska's Unfair Trade Practices and Consumer Protection Act (Act).[34] The superior court dismissed Aloha's claim, holding that because standing timber is not a "consumer good," but real property, the timber sales at issue are beyond the scope of the Act.

We agree. In *State v. First National Bank of Anchorage*,[35] we stated that "the entire thrust of [the Act] is directed at regulating practices relating to transactions involving consumer goods and services."[36] Based on the pleadings before the court, we conclude that the standing timber involved in the White River sale and the timber sale is not a "consumer" good.

Aloha's complaint describes the White River sale as comprising "the largest of the trust's timber cutting rights in the Yakataga Area, covering 3,411 acres and consisting of approximately 94 million board feet of timber." It describes the timber sale as having "a total minimum value of approximately $15 million." From these descriptions we conclude that the disputed transaction cannot be viewed as involving "consumer goods." Consumer goods are generally understood to mean goods "used or bought for use primarily for personal, family, or household purposes."[37]

Aloha appears to concede tacitly that the trees are not consumer goods; in its briefing, Aloha does not dispute the superior court's characterization of the trees as real property. Instead, Aloha argues that the Act is divisible into two independent sections, the first addressing anti-competitive practices ("unfair methods of competition"), and the second addressing deceptive consumer practices. According to Aloha, only this latter section is restricted to consumers, while the former is essentially an antitrust provision enforceable against anyone.

Aloha's argument is unpersuasive. We do not read the Act to be divisible into two separate parts, and cannot discern a justification for doing so. But if the anti-competitive part of the Act could be read to be a generally applicable, antitrust statute, Aloha would need antitrust standing to complain. For reasons discussed above in Part III.B.4, Aloha lacks that standing.

We therefore affirm the superior court's dismissal of Aloha's claims under the Unfair Trade Practices and Consumer Protection Act.

C. *Attorney's Fees and Costs*

■ Aloha argues that the superior court erred in awarding the appellees full attor-

---

**32.** *See supra* Part III.A.2.

**33.** The hearing officer also dismissed Aloha's attacks on Wasser's right of first refusal. Collateral estoppel does not preclude relitigation of the validity of the right of first refusal because the issue presented here is not identical to the issue presented to the hearing officer. The hearing officer evaluated the validity of the right of first refusal under university regulations, Alaska statutes, and the terms of the trust. The issue in this case is whether the right of first refusal is anti-competitive and, therefore, invalid under antitrust statutes. *See Borough of Ellwood City v. Pennsylvania Power Co.*, 570 F.Supp. 553, 559

(W.D.Pa.1983) (allowing relitigation of agency determination that defendant had not imposed anti-competitive price squeeze upon plaintiffs because agency only considered defendant's actions under Federal Power Act, not Sherman Act).

**34.** *See* AS 45.50.471—.561.

**35.** 660 P.2d 406 (Alaska 1982).

**36.** *Id.* at 412.

**37.** AS 45.09.109.

ney's fees in both cases. We review an award of attorney's fees and costs for an abuse of discretion.[38]

Alaska Civil Rule 82 and Alaska Appellate Rule 508 govern the fee award in Case No. S–8346, because Aloha's superior court complaint in that case was eventually treated as an administrative appeal. Alaska Civil Rule 82 governs the fee award in Case No. S–8445, because the superior court there had original jurisdiction. Although both rules permit awards of full attorney's fees,[39] we have held that an award of substantially "full attorney's fees is manifestly unreasonable in the absence of bad faith or vexatious conduct by the non-prevailing party." [40] The superior court found that Aloha's claims were frivolous in both cases. But although it also expressly found that Aloha litigated in bad faith in Case No. S–8445, the superior court made no such finding when it awarded full fees in Aloha's administrative appeal. In the latter case, it found that Aloha had brought its claims "simply for purposes of delay."

■ The superior court made the findings needed for awarding full fees in Case No. S–8445, and the record in that case contains evidence supporting those findings. We see no abuse of discretion and therefore affirm the award of full fees in that case.

■ The failure to find bad faith in Case No. S–8346 requires that the award of full attorney's fees in that case be reversed. But the record in Case No. S–8346 would not preclude a finding that Aloha litigated vexatiously or in bad faith. We therefore do not foreclose the superior court in that case from reconsidering the request for full fees on remand.

■ In Case No. S–8346 Aloha also argues that no costs or fees should have been awarded to Wasser for its participation in the administrative proceeding.[41] But Aloha commenced this superior court proceeding by filing a verified complaint seeking injunctive and declaratory relief; the complaint named Wasser as an indispensable party. The superior court remanded to the university to complete the administrative review process. The case later proceeded as an administrative appeal.

Wasser's argument that Aloha's lawsuit forced Wasser to incur substantial fees to monitor the administrative proceeding and Aloha's ancillary litigation forays is persuasive. Aloha chose to interject extraordinary complexity into what should have been a relatively simple administrative appeal. Its choice arguably caused Wasser to incur substantial expense. We have previously approved an award of fees under Appellate Rule 508 in a case in which some of the fees were incurred before the party intervened in the administrative appeal.[42] In this case the superior court had discretion to award Wasser fees for services in addition to those provided exclusively in the superior court, but only if they closely related to and were made necessary by the superior court proceeding.

It appears that the superior court knowingly exercised its discretion in awarding fees to Wasser. The court initially denied Wasser's fees motion because its motion was factually unsupported; the court then allowed Wasser to itemize its fees. In doing so, the court noted that it required the itemization so that it could determine "that the fees incurred relate to the action before the court and not some other proceeding." Given this language, we conclude that the supe-

**38.** *See Messerli v. Department of Natural Resources,* 768 P.2d 1112, 1122 (Alaska 1989), *abrogated on other grounds by Olson v. State, Dep't of Natural Resources,* 799 P.2d 289, 292 (Alaska 1990).

**39.** *See* Alaska R. Civ. P. 82(b)(3); Alaska R.App. P. 508(e).

**40.** *Marathon Oil Co. v. ARCO Alaska, Inc.,* 972 P.2d 595, 604 (Alaska 1999) (quoting Alaska R. Civ. P. 82, note to Supreme Court Order 1118am).

**41.** Aloha cites *McMillan v. Anchorage Community Hosp.,* 646 P.2d 857, 867 (Alaska 1982). *See also Stepanov v. Homer Elec. Ass'n, Inc.,* 814 P.2d 731, 737 (Alaska 1991) (holding that Rule 508 fees award should not include fees incurred in prior administrative proceeding).

**42.** *See Cook Inlet Pipeline Co. v. Alaska Pub. Util. Comm'n,* 836 P.2d 343, 354 (Alaska 1992) ("While these fees were not 'incurred in court' they were related to the appeal.").

rior court, in granting Wasser's motion, must have determined that Wasser's fees related to the superior court proceeding. We find no abuse of discretion in this regard.

Because the absence of a finding of bad faith or vexatious conduct in Case No. S–8346 requires reversal and remand of the awards of full fees, the superior court on remand will have to revisit Wasser's request for full fees.

## IV. *CONCLUSION*

In Case No. S–8346, we AFFIRM the superior court's dispositive rulings, but VACATE the awards of full attorney's fees and REMAND for further consideration of the fees issue. In Case No. S–8445, we AFFIRM as to all issues.