*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ALASKA TRUSTEE, LLC, | ) | |
| ROUTH CRABTREE OLSEN, PS, | ) | Supreme Court No. S-13978 |
| and RICHARD N. ULLSTROM, | ) | |
| | ) | Superior Court No. 3AN-09-08695 CI |
| Petitioners, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | No. 6935 – August 8, 2014 |
| ELISABETH B. BACHMEIER, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petition for Review from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Sharon Gleason, Judge.

Appearances: Richard Ullstrom, Routh Crabtree Olsen, PS, Anchorage, for Petitioners. Debra J. Fitzgerald and Jonathon A. Katcher, Pope & Katcher, Anchorage, for Respondent. Joe Solseng, Robinson Tait, PS, Seattle, Washington, for Amicus Curiae United Trustee's Association. Todd J. Timmermans, Hartig, Rhodes, Hoge & Lekisch, P.C., Anchorage, for Amicus Curiae Alaska Land Title Association.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

STOWERS, Justice.
BOLGER, Justice, with whom FABE, Chief Justice, joins, dissenting in part.

## I.  INTRODUCTION

In 2009 Elisabeth B. Bachmeier defaulted on a loan secured by a deed of trust against her home, and a nonjudicial foreclosure was initiated. Bachmeier requested a reinstatement quote in order to halt the foreclosure, as is permitted by the foreclosure statute.[1] Alaska Trustee, the trustee under the deed of trust, replied with a quote which included foreclosure costs that were not attorney's fees or court costs, the only items the foreclosure statute expressly mentions as recoverable in a reinstatement amount. Bachmeier brought suit against Alaska Trustee, Routh Crabtree Olsen (the law firm aiding in the foreclosure), and Richard Ullstrom (an attorney employed by Routh Crabtree Olsen),[2] alleging that the inclusion of the disputed foreclosure costs violated the foreclosure statute and was a deceptive practice in violation of the Unfair Trade Practices and Consumer Protection Act (UTPA).[3] Bachmeier also argued that her deed of trust did not provide that all foreclosure costs could be recovered in the reinstatement amount. Both sides moved for summary judgment. The superior court ruled that the inclusion of the foreclosure costs violated the foreclosure statute and that the UTPA applied to nonjudicial foreclosures. Alaska Trustee petitioned for review. We granted review on two questions: (1) the scope of permissible charges to be included in the reinstatement amount given to homeowners facing nonjudicial foreclosure under AS 34.20.070(b); and (2) whether the UTPA applies to nonjudicial deed of trust foreclosures.

We hold that because the beneficiary of a deed of trust has a right to be returned to its status quo *ante* when the borrower reinstates after a default, Alaska Trustee can include in Bachmeier's reinstatement amount all reasonable costs it incurred

---

[1]    AS 34.20.070(b).

[2]    These parties will be collectively referred to as Alaska Trustee.

[3]    AS 45.50.471-.561.

pursuing the foreclosure under the foreclosure statute, regardless of whether Bachmeier's deed of trust specifically provided for the inclusion of such costs. We further hold that the UTPA does not apply to nonjudicial deed of trust foreclosures.

## II.    FACTS AND PROCEEDINGS

In 2007 Elisabeth B. Bachmeier executed a note and deed of trust in favor of Richard Waner to secure the $80,000 balance due on her purchase of a residential condominium from Waner. In March 2009 Bachmeier defaulted on her payment obligations under the note and deed of trust. At Waner's request, Alaska Trustee began a nonjudicial deed of trust foreclosure. Bachmeier contacted Alaska Trustee and requested a quote for the amount she needed to pay to stop the foreclosure and reinstate her loan under the foreclosure statute. This statute gives a defaulting borrower the right to cure the default anytime before the sale "by payment of the sum in default other than the principal that would not then be due if no default had occurred, plus attorney fees or court costs actually incurred by the trustee due to the default."[4]

Alaska Trustee responded with a quote that included all the costs it had incurred pursuing the nonjudicial foreclosure. The reinstatement quote itemized the costs and showed that most of them were not attorney's fees or court costs. The total reinstatement amount was $6,720.40, $2,315.40 of which was for foreclosure expenses. Of these expenses, $1,500 was labeled as attorney's fees, but these fees were for work done by Alaska Trustee, not by an attorney.

Bachmeier paid the sum under protest and then sued Alaska Trustee. Bachmeier requested declaratory relief, injunctive relief, and damages. She argued that Alaska Trustee had violated the UTPA and the Federal Fair Debt Collection Practices

---

[4]     Former AS 34.20.070(b) (2003).

Act (FDCPA)[5] by: (1) including fees that were not attorney's fees or court costs as permitted by the foreclosure statute; (2) failing to provide Bachmeier with the correct amount needed for reinstatement; (3) not adequately describing Bachmeier's breach when informing her it was foreclosing on her home; and (4) not informing Bachmeier that she had a right to stop the foreclosure by paying the reinstatement amount. Bachmeier moved for partial summary judgment. Alaska Trustee filed a cross-motion for complete summary judgment, arguing that its actions were "governed by neither the [UTPA] [n]or [the] FDCPA," and that both the deed of trust and the foreclosure statute permitted the inclusion in the reinstatement amount of all foreclosure costs.

Superior Court Judge Sharon Gleason heard oral arguments and issued both oral and written decisions granting partial summary judgment in favor of Bachmeier. The court ruled that the inclusion of foreclosure costs was impermissible because "[i]t is a violation of AS 34.20.070(b) for [Alaska Trustee] to add on to a homeowner's 'reinstatement' amount fees that are not due and payable to a lawyer or law firm." The court further held that the UTPA applies to "non-judicial foreclosures of a borrower's residence." The court ultimately denied summary judgment on the other issues because it believed genuine issues of material fact existed.

Alaska Trustee petitioned this court for review, and we granted review on two issues: "the scope of permissible charges to be included in the 'cure' (reinstatement amount) given to homeowners facing non-judicial foreclosures under AS 34.20.070(b)" and "whether Alaska's Unfair Trade Practices and Consumer Protection Act ([UTPA]) applies to non-judicial foreclosures."[6]

---

[5]      15 U.S.C. §§ 1692-1692p (2012).

[6]      *Alaska Trustee, LLC v. Bachmeier*, 3AN-09-08695 CI (Alaska Supreme Court, Nov. 4, 2010). We are not called upon in this appeal to decide whether the Fair
(continued...)

## III. STANDARD OF REVIEW

A grant of summary judgment is reviewed de novo, viewing the evidence in the light most favorable to the non-moving party and making all reasonable inferences in its favor.[7] Summary judgment will be upheld if there is no genuine issue of material fact.[8] Issues of statutory interpretation are questions of law to which we apply our independent judgment.[9] "We interpret Alaska law 'according to reason, practicality, and common sense, taking into account the plain meaning and purpose of the law as well as the intent of the drafters.' "[10]

## IV. DISCUSSION

### A. Alaska Statute 34.20.070(b) Allows For The Inclusion Of All Reasonable Foreclosure Costs In The Reinstatement Amount.

A borrower who defaults has a right to cure the default anytime before the sale "by payment of the sum in default other than the principal that would not then be due if no default had occurred, plus attorney fees or court costs actually incurred by the trustee due to the default."[11] Bachmeier argues that this statute does not allow for the

---

[6](...continued)
Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1962p, applies to nonjudicial foreclosures.

[7]     *Witt v. State, Dep't of Corr.*, 75 P.3d 1030, 1033 (Alaska 2003) (citing *Spindle v. Sisters of Providence in Wash.*, 61 P.3d 431, 436 (Alaska 2002)).

[8]     *Parson v. State, Dep't of Revenue, Alaska Hous. Fin. Corp.*, 189 P.3d 1032, 1036 (Alaska 2008) (citing *Parker v. Tomera*, 89 P.3d 761, 765 (Alaska 2004)).

[9]     *Alderman v. Iditarod Props., Inc.*, 32 P.3d 373, 380 (Alaska 2001).

[10]     *Young v. Embley*, 143 P.3d 936, 939 (Alaska 2006) (quoting *Native Vill. of Elim v. State*, 990 P.2d 1, 5 (Alaska 1999)).

[11]     Former AS 34.20.070(b) (2003).

inclusion in the reinstatement amount of any costs besides attorney's fees or court costs and that Alaska Trustee violated the statute by including costs that were neither attorney's fees nor court costs. Alaska Trustee contends that the phrase "sum in default other than the principal that would not then be due if no default had occurred" includes the costs the trustee incurred in processing the foreclosure before the reinstatement.

In *Hagberg v. Alaska National Bank*, a bank challenged the constitutionality of the foreclosure statute's redemption provision on the grounds that, as applied, it violated the United States Constitution's Contract Clause, which forbids any state from passing a law that alters existing contracts in ways that "unreasonably affect the value" of the contractual rights.[12] We held the statute did not violate the Contract Clause as applied because the borrower "must still pay the principal and interest and, in case of default, the beneficiary is still entitled to foreclosure and to his costs."[13] We concluded that the foreclosure statute's redemption provision "does not reduce the value of a beneficiary's note or the security ensuring payment in any perceptible way" because the lender is only "deprived of his right to insist on payment of the entire debt as a condition to stopping the non-judicial foreclosure process where the overdue amount is brought current and costs are paid."[14]

Though *Hagberg* does not explicitly state which costs must be paid to reinstate a loan, logically, in order for the uncompleted foreclosure not to financially harm the beneficiary, *all* of the reasonable costs the beneficiary incurred in pursuing the

---

[12]     585 P.2d 559, 561 (Alaska 1978). The Contract Clause provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. CONST. art. I, § 10, cl. 1.

[13]     *Hagberg*, 585 P.2d at 561.

[14]     *Id.* at 561-62.

foreclosure must be repaid. Otherwise, each time the borrower redeems a defaulted loan, which the statute allows twice before the borrower loses the right of redemption,[15] the lender would lose money spent on the uncompleted foreclosure. Before the foreclosure statute was enacted, a lender would have to pay the costs for only one foreclosure during the life of a loan; now under AS 34.20.070(b) it might have to pay the costs for as many as three foreclosures — a more expensive prospect.[16] Thus, as we held in *Kuretich v. Alaska Trustee, LLC*, because *Hagberg* established that parties must be returned "to their status quo prior to the default," "the costs of non-judicial foreclosure, other than attorney's fees and court costs," may be included in the sum in default, "in so far as it is necessary to return the parties to their status quo *ante*."[17] In *Albrecht v. Alaska Trustee, LLC*, we reaffirmed this holding, explaining that "relief from forfeiture by reinstatement places the lender and borrower in the 'position they were before default,' " and that "only through the inclusion of [nonjudicial] foreclosure fees in the reinstatement amount would the parties be in 'their status quo prior to default.' "[18]

*Kuretich* and *Albrecht* involved situations very similar to Bachmeier's. In both cases a borrower whose mortgage had entered default challenged the inclusion in the reinstatement amounts of foreclosure costs that were neither attorney's fees nor court

---

[15] AS 34.20.070(b).

[16] *See Kuretich v. Alaska Tr., LLC*, 287 P.3d 87, 93-94 (Alaska 2012) (noting that "a borrower's default is not a cost-free occurrence to the lender").

[17] *Id*. at 94.

[18] 286 P.3d 1059, 1063 (Alaska 2012) (quoting *Kuretich*, 287 P.3d at 89) (internal alteration omitted).

costs.[19]  We held these foreclosure costs were properly included in the reinstatement amount.[20]

Notwithstanding these similarities, Bachmeier argues that *Kuretich* and *Albrecht* are not controlling here because in both cases the deeds of trust "expressly permitted recovery of *all* non-judicial foreclosure costs as part of the reinstatement amount," (emphasis in original) and Bachmeier's deed of trust does not provide for the reinstatement amount to include anything besides "monthly mortgage payments, attorney's fees, and court costs." Bachmeier contends that because there are "no express terms in the *Bachmeier* deed of trust and promissory note that allow anything more than" these limited costs, no other costs from the uncompleted foreclosure can be included in her reinstatement amount.

Bachmeier's argument misconstrues our holdings in *Kuretich* and *Albrecht*. Assuming without deciding that Bachmeier's deed of trust does not expressly allow all nonjudicial foreclosure costs to be included in the reinstatement amount, Alaska Trustee may still include all reasonable foreclosure costs because the beneficiary has a right to be returned to its "status quo *ante*" each time a borrower's loan is reinstated.[21]  The foreclosure costs do not need to be contracted for in the deed of trust because their inclusion is provided for by the foreclosure statute.[22]  In *Hagberg* we did not find the statute to be constitutional because the parties could, if they desired, contract for their status quo *ante*. Rather, we held that the law itself restores parties to their status quo *ante* and "does not reduce the value of a beneficiary's note or the security ensuring payment

---

[19]     *Id.* at 1061-62; *Kuretich*, 287 P.3d at 90.

[20]     *Kuretich*, 287 P.3d at 89; *Albrecht*, 286 P.3d at 1063-64.

[21]     *Kuretich*, 287 P.3d at 87-88, 94.

[22]     AS 34.20.070(b).

in any perceptible way."[23]  Indeed, because the deed of trust in *Hagberg* did not provide for reinstatement at all, it did not specify which costs could be included in reinstatement.[24]  We nonetheless held that the foreclosure statute's redemption provision would not affect the value of the contract because in order to reinstate the loan, "costs are paid" by the borrower.[25]  Therefore, whether the parties included a provision in Bachmeier's deed of trust allowing all reasonable foreclosure costs to be included in the reinstatement amount is irrelevant.

Bachmeier further argues that even if she is liable for all foreclosure costs in the case of default, because her deed of trust does not state that these costs can be included in her reinstatement amount, Alaska Trustee must allow her to reinstate her loan without paying the foreclosure costs, and then it can initiate a lawsuit in court to collect them.  But this arrangement would defeat the purpose of the nonjudicial foreclosure statute — avoiding expensive legal costs and alleviating congestion in the courts.  We reiterate that AS 34.20.070(b) and our decisions in *Hagberg*, *Kuretich*, and *Albrecht* allow for the inclusion of all reasonable foreclosure costs in a reinstatement amount.  It was error for the superior court to grant partial summary judgment on this issue to Bachmeier, and we reverse that decision.

**B.     The UTPA Does Not Apply To Alaska Trustee's Nonjudicial Foreclosure Of Bachmeier's Deed Of Trust.**

Bachmeier argues that Alaska Trustee violated the UTPA by "deceptively padding her reinstatement amount."  Alaska Trustee counters that the UTPA does not

---

[23]     *Hagberg v. Alaska Nat'l Bank*, 585 P.2d 559, 562 (Alaska 1978).

[24]     *Id.* at 560.

[25]     *Id.* at 561-62.

apply to nonjudicial foreclosures. The superior court agreed with Bachmeier and granted partial summary judgment on the issue.

For the past thirty years we have consistently held that "the sale of real property is not within the regulatory scope of the [UTPA]."[26] In *State v. First National Bank of Anchorage*, we held that the UTPA does not apply to "real property" because "the Act is directed solely at regulating transactions involving products and services sold to consumers in the popular sense."[27]

In *Barber v. National Bank of Alaska*, we held that a home loan is not a good or a service. In that case, the borrower stopped making payments on his loan and the servicer eventually foreclosed on the property.[28] The borrower sued, alleging violations of the UTPA.[29] The borrower argued that "the mortgage . . . was a 'good,' or alternatively, that the mortgage and the subsequent servicing arrangements were a provision of 'services.' "[30] We held that the UTPA did not apply to the borrower's home loan because a "loan . . . is not a 'good' under the [UTPA]."[31] Because the servicer's "principal business [was] not debt collection," the servicer was not an independent debt

---

[26]     *State v. First Nat'l Bank of Anchorage*, 660 P.2d 406, 414 (Alaska 1982); *see also Roberson v. Southwood Manor Assocs., LLC*, 249 P.3d 1059, 1063 (Alaska 2011).

[27]     660 P.2d at 413 (internal quotation marks and citations omitted).

[28]     815 P.2d 857, 859-60 (Alaska 1991).

[29]     *Id*. at 860.

[30]     *Id*. at 861.

[31]     *Id*.

collector providing a service either.[32]  Accordingly, we held as a matter of law that the loan was neither a good nor a service and that "the [UTPA] does not apply to . . . mortgage[s]."[33]

We reiterated our holding that the Act covers only "goods or services," not real property, in *Aloha Lumber Corporation v. University of Alaska*.[34]  In *Western Star Trucks, Inc. v. Big Iron Equipment Services, Inc.*, we explained again that "sales and services involving real estate [are distinct] from those involving other property and services" and that "real estate transactions were not intended to be covered by the [UTPA]."[35]

In 2011 we held, once again, that the UTPA does not cover real estate transactions.[36]  We noted that "the legislature responded to our holding in *Barber* and chose to include certain mortgage practices within the UTPA," but that "the legislature has not amended [the UTPA] to include real estate transactions . . . despite our clear statement in *Western Star Trucks* that real estate transactions fall outside the UTPA's scope."[37]  We rejected the argument that a landlord is a "provider of consumer

---

[32]    *Id*.

[33]    *Id*.

[34]    994 P.2d 991, 1002 (Alaska 1999) (holding that the UTPA does not cover a timber sale).

[35]    101 P.3d 1047, 1048 (Alaska 2004).

[36]     *Roberson v. Southwood Manor Assocs.*, 249 P.3d 1059, 1063 (Alaska 2011).

[37]    *Id*. at 1062-63.

services,"[38] and held that a lease is more akin to a real property transaction than a service.[39]

Despite this abundance of precedent, Bachmeier contends that two recent amendments to the UTPA, one in 2004[40] and one in 2007,[41] overturned our holding in *Barber* and extended the protections of the UTPA to some nonjudicial foreclosures. But the 2007 amendment — which extended the UTPA's definition of an unfair practice to include violations of AS 06.60.340, the Mortgage Lending Regulation Act[42] — does not apply to Alaska Trustee.[43] And the 2004 amendment, which defined goods or services to include "goods or services provided in connection with . . . a transaction involving an indebtedness secured by the borrower's residence,"[44] also does not help Bachmeier. The 2004 amendment elaborated what *types* of goods and services are covered by the Act,

---

[38] *Id*. at 1062.

[39] *Id*.

[40] Ch. 55, § 9, SLA 2004 (codified at AS 45.50.561(a)(9)).

[41] Ch. 50, § 8, SLA 2007 (codified at AS 45.50.471(b)(52)).

[42] *Id.*

[43] The Mortgage Lending Regulation Act regulates the activities of "[a] person who is required to be licensed under this chapter and a person who is licensed under AS 06.20." AS 06.60.340. The Act requires mortgage lenders, mortgage brokers, mortgage loan originators, loan processors, and certain loan underwriters to be licensed. AS 06.60.010(a); AS 06.60.012(a); AS 060.60.013(a). Alaska Statute 06.20, the Alaska Small Loans Act, requires those issuing loans valued at $25,000 or less, and with an interest rate over the normal statutory limit, to apply for a special license. AS 06.20.010(a). Alaska Trustee does not fall into either category, and the Act itself has no implication for non-judicial deed of trust foreclosures.

[44] AS 45.50.561(a)(9); *see also* Ch. 55, § 9, SLA 2004.

but did not change the longstanding definition of goods and services itself — a definition that has never encompassed real property transactions.

"When interpreting a statute, [we] look[] to three factors:  the language of the statute, the legislative history, and the legislative purpose behind the statute."[45]  We have "rejected a mechanical application of the plain meaning rule," and adopted an approach where "the plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be."[46]

Notably, the 2004 amendment includes only "*goods or services* provided in connection with . . . a transaction involving an indebtedness secured by the borrower's residence."[47]  Confirming UTPA coverage for "goods or services" transactions involving indebtedness secured by the borrower's residence does not eliminate the requirement that the transaction must still be for "goods or services."[48]  And we have consistently defined

---

[45]    *W. Star Trucks, Inc. v. Big Iron Equip. Serv., Inc.*, 101 P.3d 1047, 1050 (Alaska 2004).

[46]    *Id*.

[47]    AS 45.50.561(a)(9) (emphasis added); *see also* Ch. 55, § 9, SLA 2004.

[48]    The 2004 amendment only expanded the UTPA to cover certain transactions involving "goods or services" that might otherwise be thought of as outside the scope of the UTPA because they include the use of residential property as security. The amendment makes clear that a "goods or services" transaction that involves an associated debt secured by a deed of trust covering the debtor's residence, i.e., using a deed of trust as security for a "goods or services" transaction, does not turn the transaction into a real estate transaction outside the coverage of the UTPA.

"goods or services" as excluding transactions involving real property.[49] Thus, the amendment does not expand UTPA coverage to real property transactions.

The legislative history does not lead us to conclude otherwise. The 2004 amendment originated in House Bill 15, which was intended to establish a "no-call" list for Alaska.[50] The original title for the Bill was:

> An Act relating to establishing the Alaska No-Call list, a database of residential telephone customers who do not wish to receive telephone solicitations; requiring telephonic sellers and paid solicitors to purchase the database; requiring telephonic sellers to identify themselves; requiring telephonic solicitors who are otherwise exempt from registration as telephonic solicitors to file with the Department of Law and pay the database access fee; and providing for an effective date.[51]

This draft did not contain the definition of goods and services now at issue. The only mention of home loans was in a sentence in the last paragraph of the sponsor statement: "House Bill 15 will begin the process of eliminating those unsolicited phone calls asking you about your mortgage rate or if you want aluminum siding."[52]

---

[49]  *Roberson v. Southwood Manor Assocs.*, 249 P.3d 1059, 1063 (Alaska 2011); *W. Star Trucks, Inc.*, 101 P.3d at 1048; *Aloha Lumber Corp. v. Univ. of Alaska*, 994 P.2d 991, 1002 (Alaska 1999); *Barber v. Nat'l Bank of Alaska*, 815 P.2d 857, 861 (Alaska 1991); *State v. First Nat'l Bank of Anchorage*, 660 P.2d 406, 414 (Alaska 1982).

[50]  Ch. 55, §§10-24, 28-33, SLA 2004.

[51]  Rep. Hugh Fate, Sponsor Statement for H.B. 15, 23d Leg., 1st Sess., *available at* Alaska Leg. Microfiche Collection No. 2484-86.

[52]  *Id*.

The Bill was put on hold after Congress passed its national "do-not call" legislation.[53] But in 2004 the Bill was revived in order to "complete the process for Alaska."[54] New House Bill 15 was written to "accomplish what the original version sought to do, without the need for Alaskans to sign up again in state."[55] The sponsor statement again touted a "quieter dinner hour for Alaskans" and stated that the Bill "sen[t] a clear message to telemarketers that these people do not wish to be called."[56] The new version of the Bill contained the goods and services definition.

On March 1, 2004, the House Finance Committee changed the name of the Bill from the unwieldy designation quoted above to, "AN ACT relating to fair trade practices and consumer protection; relating to telephonic solicitations; relating to charitable solicitations; and providing for an effective date."[57] This unanimous change was made with no discussion.[58]

The Bill was passed by the House and was transmitted to the Senate, where it was considered by the Labor & Commerce Committee.[59] In the Senate Labor & Commerce Committee there was extensive discussion regarding whether the Bill would

---

[53] Do-Not-Call Implementation Act, Pub. L. No. 108-10, 117 Stat. 557 (2003); Minutes, H. Finance Comm. Hearing on H.B. 15, 23d Leg., 2d Sess. (Feb. 19, 2004) (opening remarks of Rep. Hugh Fate).

[54] Rep. Hugh Fate, Sponsor Statement for CS for H.B. 15, 23d Leg., 2d Sess., *available at* Alaska Leg. Microfiche Collection No. 11178-79.

[55] *Id*.

[56] *Id*.

[57] 2004 House Journal 2791-92.

[58] *Id*.

[59] 2004 House Journal 2824-26, 2834; 2004 Senate Journal 2403.

apply to magazine subscriptions in cases where the customer placed the telephone call to the magazine.[60] There was even testimony from the Magazine Publishers of America on this narrow issue.[61] No other issues of consequence were discussed before the Bill left the Senate Labor & Commerce Committee in April 2004. After passing the Senate Judiciary and Finance Committees in May 2004 the Bill was promptly passed by the House and the Senate.[62]

It is clear that the Alaska Legislature did not anticipate the argument that Bachmeier makes. Nowhere in the committee minutes, committee files, or bill drafts is there any discussion of goods and services or any discussion of the UTPA. Critically, there was no discussion, or even the hint of a suggestion, that the amendments were intended to include nonjudicial deed of trust foreclosures in the UTPA. In this situation the court must "guess what [the legislature] would have intended on a point not presented to its mind, if the point had been presented."[63]

Amending the UTPA to include nonjudicial foreclosures would have been a significant and controversial change to existing law. There would have been extensive debate reflected in the committee minutes;[64] instead there was a brief debate about

---

[60]  Minutes, Sen. Labor & Commerce Comm. Hearing on H.B. 15, 23d Leg., 2d Sess. (Mar. 25, 2004).

[61]  *Id*. (testimony of Mr. Robert Flint, Direct Marketing Association and Magazine Publishers of America).

[62]  2004 Senate Journal 3632; 2004 House Journal 4249-50.

[63]  *Beck v. State, Dept. of Transp. & Pub. Facilities*, 837 P.3d 105, 117 (Alaska 1992) (quoting JOHN CHIPMAN GRAY, THE NATURE AND SOURCES OF THE LAW, 173 (2d ed. 1972)).

[64]  *Gillis v. Aleutians East Bor.*, 258 P.3d 118, 123 (Alaska 2011) (noting that
(continued...)

magazine subscriptions.[65]  There would have been testimony from banks, trustees, and homeowners; instead there was testimony from the Magazine Publishers of America, AARP (formerly the American Association of Retired Persons), and the Older Persons Action Group.[66]

The purpose, sponsor statement, and sectional analysis of House Bill 15 do not support Bachmeier's argument that the 2004 amendment expanded the UTPA to cover real estate transactions, as well as transactions for goods and services.  At most, the legislative history and purpose evince an intent to bring telephonic solicitation of mortgage origination under the purview of the UTPA.  Moreover, the plain language of the amendment, that the UTPA now covers "*goods or services* provided in connection with . . . a transaction involving an indebtedness secured by the borrower's residence,"[67] does not eliminate the requirement that the transaction must still be one for goods or services.  We have consistently held that real property transactions are neither a good nor

---

[64](...continued)
if a statutory provision were intended to be a significant change in legislative land disposal policy "we would expect a more thorough legislative debate . . . and a much richer legislative history supporting [that] position").

[65]     Minutes, Sen. Labor & Commerce Comm. Hearing on H.B. 15, 23d Leg., 2d Sess. (Mar. 25, 2004).

[66]     *Id*. (testimony of Mr. Robert Flint, Direct Marketing Association and Magazine Publishers of America); Minutes H. Labor & Commerce Comm. Hearing on H.B. 15, 23d Leg., 1st Sess. (Feb. 7, 2003) (statements of Rep. Hugh Fate and testimony of Marie Darlin, Coordinator, Capital City Task Force, AARP; Rosalee Walker, Older Persons Action Group; James Carroll, Juneau Retired Teachers Association, AARP; John Furuness, Juneau Chapter Number 2088, National Association of Retired Federal Employees, AARP).

[67]     Ch. 55, § 9, SLA 2004 (emphasis added).

a service, and the 2004 amendment did not change that longstanding definition.[68]  Thus, we hold that the 2004 amendment did not bring non-judicial deed of trust foreclosures by trustee into the ambit of the UTPA.  Consequently, it was error for the superior court to grant Bachmeier partial summary judgment on this issue.

## V.    CONCLUSION

We REVERSE the superior court's rulings that AS 34.20.070(b) does not permit the beneficiary to include all foreclosure costs in the reinstatement amount and that the UTPA applies to nonjudicial deed of trust foreclosures.  We REMAND to the superior court for further proceedings consistent with this opinion.

---

[68]      *Shea v. State, Dep't of Admin., Div. of Ret. & Benefits*, 267 P.3d 624, 636 n.33 (Alaska 2011) (citing *Young v. Embley*, 143 P.3d 936, 945 (Alaska 2006)) ("We assume the legislature is aware of the common law when it passes legislation."); *see also Joseph v. State*, 293 P.3d 488, 492 (Alaska App. 2012) ("[T]he legislature is presumed to be aware of pertinent court decisions when it amends a statute.") *reh'g denied* (Dec. 31, 2012).  We said specifically in *Barber v. Nat'l Bank of Alaska* that "as a matter of law . . . the [UTPA] does not apply to . . . mortgage[s]," 815 P.2d 857, 861 (Alaska 1991), and the legislature gave no indication in the 2004 amendment that it was intending to overrule *Barber*.

BOLGER, Justice, with whom FABE, Chief Justice, joins, dissenting in part.

I agree with the portion of the court's opinion that explains the foreclosure fees and costs that may be demanded by a beneficiary as a condition of reinstatement under AS 34.20.070(b).  But I respectfully disagree with the court's holding that the Unfair Trade Practices and Consumer Protection Act (UTPA) does not apply to nonjudicial foreclosures.  In my opinion, the plain language of the Act covers transactions related to a debt secured by residential real estate.

This dispute is focused on the definition of "goods or services" covered by the UTPA, which was added to the statute in 2004.[1]  According to this definition,

> "goods or services" includes goods or services provided in connection with a consumer credit transaction or with a transaction involving an indebtedness secured by the borrower's residence . . . .[2]

When we interpret a statute, we begin with the plain meaning of its language.[3]  The legislative history of a statute can sometimes alter its literal terms, but "the plainer the language of the statute, the more convincing contrary legislative history must be."[4]  "Even if legislative history is 'somewhat contrary' to the plain meaning of a statute, plain meaning still controls."[5]  And we will not rewrite a statute to promote purposes espoused in the legislative history, even if we think the legislature made a

---

[1]     Ch. 55, § 9, SLA 2004.

[2]     AS 45.50.561(a)(9).

[3]     *Ward v. State, Dep't of Pub. Safety*, 288 P.3d 94, 98 (Alaska 2012).

[4]     *Id.*  (citation omitted).

[5]     *Estate of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380, 387 (Alaska 2013) (citation omitted).

mistake.**[6]**  Finally, because the UTPA is a remedial statute, its language should be liberally construed.**[7]**

It seems clear that a nonjudicial foreclosure is a "transaction involving an indebtedness secured by the borrower's residence."**[8]**  Nevertheless, the court concludes that, construed in light of the legislative history and our precedents, the statutory definition of "goods or services" quoted above cannot mean what it says.

In reaching this conclusion, the court's opinion asserts that "we have consistently defined 'goods and services' as excluding transactions involving real property."  And, because the amendment defines "goods or services" as " '*goods or services* provided in connection with . . . a transaction involving an indebtedness secured by the borrower's residence,' " the court assumes that the legislature's new definition incorporates the definition of "goods or services" established in our earlier UTPA decisions.  The court therefore concludes that, although "[t]he 2004 amendment elaborated what *types* of goods or services are covered by the act, [it] did not change the longstanding definition of goods or services itself — a definition that has never encompassed real property transactions."

But that conclusion misconstrues our precedents.  We have never held that, as a matter of English usage, "goods or services" cannot include services provided in

---

**[6]**  *See State, Dep't of Commerce, Cmty. & Econ. Dev. v. Alyeska Pipeline Serv. Co.*, 262 P.3d 593, 598 (Alaska 2011); *Alaskans for a Common Language, Inc. v. Kritz*, 170 P.3d 183, 192 (Alaska 2007) ("[T]he extent to which the express language of the provision can be altered and departed from and the extent to which the infirmities can be rectified by the use of implied terms is limited by the constitutionally decreed separation of powers which prohibits this court from enacting legislation or redrafting defective statutes." (citations omitted)).

**[7]**  *State v. First Nat'l Bank of Anchorage*, 660 P.2d 406, 412 (Alaska 1982).

**[8]**  AS 45.50.561(a)(9).

connection with real estate transactions. Rather, in *First National Bank of Anchorage*, the case in which this question was first presented, we concluded that the UTPA did not cover real estate transactions because its list of "unfair methods of competition" and "deceptive acts or practices" did not mention real property, "[n]or [did] any other provisions of the Act suggest that the legislature intended the sale of real property to come within the Act's purview."[9] And each of the other decisions the court's opinion cites merely followed *First National Bank*'s holding.[10]

But when the legislature amended the definition of "goods or services" in 2004, it included within the scope of the UTPA one type of real property transaction not previously covered: "a transaction involving an indebtedness secured by the borrower's residence." Therefore, the reasoning behind *First National Bank* — that "goods or services" do not include real property transactions because the Act does not mention real property[11] — does not apply to the statute as amended. Similarly, in *Roberson v. Southwood Manor Associates, LLC*, we recognized that, through a 2007 revision to the Act, "the legislature responded to our holding in *Barber* and chose to include certain mortgage practices within the UTPA."[12]

---

[9] 660 P.2d at 412-13.

[10] *See Roberson v. Southwood Manor Assocs., LLC*, 249 P.3d 1059, 1061 (Alaska 2011) (citing *First Nat'l Bank of Anchorage*, 660 P.2d at 412-13); *W. Star Trucks, Inc. v. Big Iron Equip. Serv., Inc.*, 101 P.3d 1047, 1051 (Alaska 2004) (citing *First Nat'l Bank of Anchorage*, 660 P.2d at 412); *Aloha Lumber Corp. v. Univ. of Alaska*, 994 P.2d 991, 1002 (Alaska 1999) (citing *First Nat'l Bank of Anchorage*, 660 P.2d at 412); *Barber v. Nat'l Bank of Alaska*, 815 P.2d 857, 861 (Alaska 1991) (citing *First Nat'l Bank of Anchorage*, 660 P.2d at 413);

[11] *First Nat'l Bank of Anchorage*, 660 P.2d at 412-13.

[12] 249 P.3d at 1062-63.

The court's opinion also argues that *Roberson*, which was published seven years after the 2004 amendment, confirms that "the legislature has not amended [the UTPA] to include real estate transactions." But because the transaction at issue in *Roberson* — a lease — is clearly not "a transaction involving an indebtedness secured by the borrower's residence," the parties did not raise, and we had no occasion to consider, the effect of the 2004 amendment.[13]

Nor does the legislative history support the court's construction of the amendment. Evidence of legislative intent would have to be quite convincing to overcome the unambiguous language of this statute, and the legislative history the court cites does not satisfy that significant burden.

Although the bill that added this definition of "goods or services" did, in part, target telephone solicitation,[14] there was nothing in the language of the bill that reflected an intent to limit "goods or services provided in connection with" mortgage transactions to services provided over the telephone. If the legislature had wanted to affect only telephone solicitation, it could have added a new section to AS 45.50.471(b), which defines violations, rather than modifying the definitions section. Or the legislature could have added language to the definition itself to clarify that it applies only to telephone solicitations. But the amendment contains no such limitation, and we should not assume that the legislature failed to include one by mistake.

The court also notes that the sectional analysis for the 2004 bill states that the new definition of "goods or services" "includes solicitations by credit organizations

---

[13] *See id.* at 1060-63.

[14] *See* Ch. 55, §§10-24, 28-33, SLA 2004.

offering financing arra[nge]ments."[15] Although this language recognizes that the amendment *includes* certain telephonic solicitations, it does not suggest that the new definition is *limited* to such solicitations.[16] If the legislature had intended the meaning suggested by the court, it could have specifically stated that the definition applies only to "services related to the solicitation of mortgage loans." In context, it seems more likely that the sectional analysis was intended to clarify that the definition was intended to cover "goods or services" that were merely solicited in addition to those that were actually provided.[17]

The draft opinion also relies on the fact that the bill's sponsor statements focused on the need to limit telephone solicitations.[18] Although "statements made by a bill's sponsor during legislative deliberations are relevant evidence when the court is trying to determine legislative intent,"[19] "[t]he remarks of a single legislator, even the

---

[15] Rep. Hugh Fate, Sectional Analysis of Proposed H.B. 15, 23rd Leg., 2d Sess., at 2 (Feb. 24, 2004).

[16] *See* AS 01.10.040(b) ("When the words 'includes' or 'including' are used in a law, they shall be construed as though followed by the phrase 'but not limited to.' ").

[17] *See* AS 45.50.561(a)(9) (" 'goods or services' includes goods or services *provided* in connection with a consumer credit transaction or with a transaction involving an indebtedness secured by the borrower's residence." (emphasis added)).

[18] *See* Rep. Hugh Fate, Sponsor Statement, H.B. 15, 23rd Leg., 1st Sess. (Jan 21, 2003); Rep. Hugh Fate, Sponsor Statement, H.B. 15, 23rd Leg., 2d Sess. (Feb. 24, 2004).

[19] *Alaskans for a Common Language, Inc. v. Kritz*, 170 P.3d 183, 193 (Alaska 2007) (citations and alterations omitted).

sponsor, are not controlling in analyzing legislative history."[20]  Therefore, we should not assume that isolated assertions by the bill sponsor accurately represent the intent of the entire legislature or the purpose of the entire bill.

It is also worth noting that, when the new definition of "goods or services" was added to the bill, its title was amended to include "fair trade practices and consumer protection."[21]  This amended title confirms that the focus of the bill had expanded with the addition of the new language.

Finally, my construction of this definition is consistent with other authorities suggesting that the UTPA covers the debt collection practices at issue in this case.  When we interpret the UTPA, we are required to give great weight to the cases interpreting the Federal Trade Commission Act,[22] which includes violations of the Fair Debt Collection Practices Act.[23]  Other courts have recognized that nonjudicial foreclosure services are among the debt collection services encompassed by these federal statutes.[24]  So the case law construing these federal statutes is consistent with  the legislative amendment to the definition of "goods or services" in 2004.  The UTPA applies to debt collection services "involving an indebtedness secured by the borrower's residence," services that include a nonjudicial foreclosure.

---

[20]     *Chrysler Corp. v. Brown*, 441 U.S. 281, 311 (1979).

[21]     H.B. 15, 23rd Leg., 2d Sess. (Feb. 24, 2004).

[22]     AS 45.50.545; *ASRC Energy Servs. Power and Commc'ns, LLC v. Golden Valley Electric Ass'n, Inc.*, 267 P.3d 1151, 1158-59 (Alaska 2011).

[23]     *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 529-30 (Alaska 1980).

[24]     *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461-63 (6th Cir. 2013); *Wilson v. Draper & Goldberg, PLLC*, 443 F.3d 373, 376-77 (4th Cir. 2006); *Shapiro & Meinhold v. Zartman*, 823 P.2d 120, 124 (Colo. 1992).

In summary, there is nothing in the legislative history that discusses the meaning of "goods or services" in a manner inconsistent with the language of AS 45.50.561(a)(9). Therefore, there is no evidence of a contrary legislative intent that should override the plain meaning of this statutory definition. I would hold that nonjudicial foreclosures are covered by the plain language of the UTPA.