*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| LEE E. BAKER, JR., | ) | |
| | ) | Supreme Court No. S-18504 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-07-08461 CI |
| v. | ) | |
| | ) | O P I N I O N |
| KENNETH M. DUFFUS, | ) | |
| | ) | No. 7687 – February 16, 2024 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, William F. Morse, Judge.

Appearances: Michael Bedinger, Jones Bedinger, LLC, Anchorage, for Appellant. Adam W. Cook and Zoe A. Eisberg, Birch Horton Bittner & Cherot, Anchorage, for Appellee.

Before: Maassen, Chief Justice, Carney, Borghesan, and Pate, Justices. [Henderson, Justice, not participating.]

CARNEY, Justice.

## I. INTRODUCTION

Lee Baker and Kenneth Duffus were partners in a real estate development company that failed after Baker defrauded it. After the company's members were sued for defaulting on a loan, Duffus cross-claimed against Baker, claiming Baker violated the Unfair Trade Practices and Consumer Protection Act (UTPA). Baker filed further counterclaims, which the superior court dismissed. A jury found for Duffus, but we

reversed because Baker's counterclaims were improperly dismissed. During a second trial, Baker filed a motion for partial summary judgment, arguing that the UTPA did not apply at all. The superior court rejected these arguments, and Duffus won another jury verdict for over $1 million.

Baker now appeals only the superior court's denial of his summary judgment motion before the second trial. He argues that his conduct was part of a real estate transaction, which would place it outside of the UTPA's scope. And he argues that his fraud was entirely within the company's internal operations, which would also place it beyond the statute. We reject these arguments and affirm the superior court.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

In 2004 Baker, Duffus, and a third individual not involved in this appeal formed Harvest Properties, LLC (Harvest), a limited liability company, to develop residential property for sale in Anchorage. Each was a member-manager with an equal share in the company. Harvest took out — and each member personally guaranteed — a $4.5 million bank loan. In 2007 Harvest and its members defaulted on the loan, and the bank sued for repayment. Duffus settled but cross-claimed against Baker, alleging that Baker had defrauded the company and bank and had violated the UTPA. After a jury initially found for Duffus on his claims, we reversed and remanded for a new trial, holding that the superior court had erroneously dismissed Baker's counterclaims against Duffus.[1]

### B.    Proceedings

At the second trial, Duffus again alleged that Baker had defrauded Harvest and the bank. According to him Baker offered to "provide accounting and bookkeeping services for Harvest" through Discovery Construction, Inc. (DCI), a separate corporation that he owned. These services were to be "an in-kind contribution" made

---

[1]      For more details, *see Baker v. Duffus*, 441 P.3d 432, 435 (Alaska 2019).

"without direct personal compensation" from Harvest. Duffus agreed to this arrangement. But, Duffus alleged, Baker proceeded to withdraw money for work that was not done, failed to make capital contributions, wrote "about $312,000 in unauthorized checks to himself, DCI, and his wife's company," and "ma[de] personal use of Harvest Properties' cash without informing the other members or asking for authorization." As a result Harvest had almost no funds by early 2007. Duffus alleged that "[his] loss was directly caused by . . . Baker's embezzlement . . . and failure to make requisite contributions."

Baker moved for partial summary judgment. He argued that the UTPA was "inapplicable to the facts of this case" because Harvest's activities — and, by extension, his own fraud — were "real estate transactions" excluded from UTPA coverage. He also argued that the UTPA only protected "consumers," a category that did not include Duffus. And he argued that because he was not a "business" and his fraud was entirely within Harvest's internal operations, the claims did not arise from "the conduct of trade or commerce" as required by the UTPA. Duffus opposed.

The superior court granted the motion in part and denied it in part. It rejected Baker's UTPA arguments, finding that the fraud was not part of a real estate transaction, that the UTPA applies to conduct within businesses and involving individuals, and that Baker was liable to Harvest despite being a member-manager.[2] The case proceeded to trial, and another jury found in Duffus's favor. The jury found that Baker had "engage[d] in an unfair or deceptive act or practice" that was "a substantial factor in causing harm to Kenneth Duffus." For those acts it specifically awarded damages of $200,000, which the court trebled per the UTPA's damages

---

[2] The court granted summary judgment on a claim that Duffus agreed to have dismissed.

provision.[3]  In total Duffus was awarded $1.8 million in damages and fees.  This appeal followed.

## III.  STANDARD OF REVIEW

We "review denials of summary judgment motions de novo to determine . . . whether the moving party is entitled to judgment as a matter of law, viewing all facts in the light most favorable to the non-movant."[4]  "Statutory interpretation is also a question of law, which we review de novo."[5]  We interpret statutes "according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[6]  We adopt "the rule of law most persuasive in light of precedent, reason, and policy."[7]  A denial of summary judgment is "generally unreviewable"[8] after trial if the denial was on factual grounds, but it is reviewable if "entered on a legal ground that affected the subsequent trial."[9]

---

[3]     *See* AS 45.50.531(a).

[4]     *State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs. v. Sandsness*, 72 P.3d 299, 301 (Alaska 2003).

[5]     *Madonna v. Tamarack Air, Ltd.*, 298 P.3d 875, 878 (Alaska 2013).

[6]     *Nelson v. Mun. of Anchorage*, 267 P.3d 636, 639 (Alaska 2011).

[7]     *L.D.G., Inc. v. Brown*, 211 P.3d 1110, 1118 (Alaska 2009).

[8]     *Greene v. Tinker*, 332 P.3d 21, 32 (Alaska 2014).

[9]     *Id.* (quoting *ConocoPhillips Alaska, Inc. v. Williams Alaska Petroleum, Inc.*, 322 P.3d 114, 133 n.66 (Alaska 2014)).  In this case Duffus concedes that the court "never expressly identified a dispute of material fact" regarding the UTPA claim.  Instead the superior court's denial of summary judgment was on entirely legal grounds.  Duffus argues that we should nevertheless exercise our discretion to "affirm the decision of the superior court on any basis supported by the record."  *Soules v. Ramstack*, 95 P.3d 933, 937 (Alaska 2004).  He points to the existence of what he believes is a disputed material fact that could have justified denial on factual grounds.  But we have explicitly stated that our review of summary judgment denial "focuses on the [first] court's basis for ruling" and not on a party or appellate court's subsequent "belief that the case could be resolved" in another manner.  *Larson v. Benediktsson*, 152

## IV.   DISCUSSION

Baker appeals only the denial of his motion for summary judgment.  He argues that his embezzlement is "inextricably tied to the company's real estate transactions" and therefore outside the UTPA's scope.  He also argues that he committed fraud "in his role as a managing member," not as a third party, and that such conduct is also outside the UTPA's scope.  We reject both arguments.

### A.   Baker's Fraud Was Not Part Of A Real Estate Transaction.

Neither the list of acts or practices expressly prohibited by the UTPA, "[n]or [] any other provisions of the Act, suggest that the legislature intended the sale of real property to come within the Act's purview."[10]  Baker argues that because Harvest was formed to conduct real estate transactions and the funds he misappropriated were inextricable from that larger goal, Duffus's entire claim is outside the scope of the UTPA.  Duffus responds that real estate transactions in this context require "a transfer of interest in real property," and that because Baker's fraud was not part of such a transfer, it falls under the statute.  The superior court found that "Baker's alleged misconduct was not a transaction involving real property for purposes of the UTPA.  In fact, rather than involving . . . real estate transactions, the alleged embezzlement prevented those transactions by contributing to the financial ruin of Harvest Properties."

In a line of cases stretching back over 40 years, we have made clear that real estate transactions are not covered by the UTPA.[11]  One of those cases, *Roberson v. Southwood Manor Associations, LLC*, presented the question of whether a residential

---

P.3d 1159, 1170 (Alaska 2007).  We therefore review the denial of summary judgment in this case.

[10]    *State v. First Nat'l Bank of Anchorage*, 660 P.2d 406, 413 (Alaska 1982).

[11]    *See id.*; *Barber v. Nat'l Bank of Alaska*, 815 P.2d 857, 861 (Alaska 1991); *Roberson v. Southwood Manor Assocs., LLC*, 249 P.3d 1059, 1062-63 (Alaska 2011); *Alaska Tr., LLC v. Bachmeier*, 332 P.3d 1, 9 (Alaska 2014).

lease — and a potentially deceptive provision in it — fell within the UTPA's scope.[12] We reaffirmed that "the relevant distinction" was between "real property transactions and non-real property transactions."[13] And we defined real property transactions as containing "a transfer of the property's interest."[14] Because leases include a transfer of interest, we held that the UTPA did not apply to them.[15] In a footnote we added that this "transfer in interest is required" and stated that such a requirement should "ameliorate . . . concern that a broad reading of 'transactions involving real property' would preclude a UTPA claim for such deceptive practices as a 'home construction scam,' because such practices do not involve an interest transfer."[16]

In this case Baker's embezzlement and fraud affected only Harvest's ability to realize larger, future goals involving the unrealized transfer of undeveloped property. His conduct did not, as the superior court noted, interfere with the actual transfer of an interest. Rather than affecting actual closed sales of real property,[17] signed leases,[18] or completed foreclosures,[19] it resembled a "home construction

---

[12]    249 P.3d at 1060-62.

[13]    *Id.* at 1061.

[14]    *Id.* at 1062.

[15]    *Id.*

[16]    *Id.* at 1062 n.30.

[17]    *Cf. State v. First Nat'l Bank of Anchorage*, 660 P.2d 406, 409 (Alaska 1982).

[18]    *Cf. Roberson v. Southwood Manor Assocs., LLC*, 249 P.3d 1059, 1060-62 (Alaska 2011).

[19]    *Cf. Alaska Tr., LLC v. Bachmeier*, 332 P.3d 1, 9 (Alaska 2014).

scam."[20] The UTPA therefore applies to Baker's conduct in this case.[21]

Baker's reference to the statutory definition of "real estate transaction" in AS 08.88.990(13)(A) does not save his argument. That provision is found in a chapter of the Alaska Statutes that governs "real estate brokers and other licensees."[22] It defines "real estate transaction" to include "an act conducted as a result of or in pursuit of a contract to transfer an interest in a unit of real property, or an act conducted in an attempt to obtain a contract to market real property."[23]

But a definition from an unrelated statute does not dictate the application of our own cases. We presume that terms share definitions "[w]hen the legislature uses the same term in two closely related statutes."[24] But the comparison here is not between two statutes; it is between a statutory term and a term from our cases.[25] Indeed our interpretation of the UTPA focuses not on the legislature's use of the term "real estate transactions" but on its omission of the term entirely.[26]

---

[20]    *Cf. Roberson*, 249 P.3d at 1062 n.30.

[21]    Duffus presses the policy implications of Baker's position, saying that it would swallow up "*any good or service* sold to a company that is in the business of selling property." Because this case can be resolved in light of the statute's text and application of our precedent, we do not reach these arguments. *Cf. Ward v. State*, 288 P.3d 94, 106 (Alaska 2012) (noting that if statute is clear, policy arguments are for legislature).

[22]    AS 08.88.010-990.

[23]    AS 08.88.990(13)(A).

[24]    *BP Pipelines (Alaska) Inc. v. State, Dep't of Revenue*, 325 P.3d 478, 483 (Alaska 2014) (quoting *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 906 (Alaska 1987)).

[25]    *Cf. Aloha Lumber Corp. v. Univ. of Alaska*, 994 P.2d 991, 1002 (Alaska 1999) (referring to separate statutory definition for "consumer goods" but only as its "generally understood" definition and not as binding for UTPA purposes).

[26]    *See State v. First Nat'l Bank of Anchorage*, 660 P.2d 406, 412-13 (Alaska 1982) (applying *ejusdem generis* and emphasizing that, at time of decision, "none of the enumerated prohibited acts mentions real property.").

## B. Baker's Conduct Was Not Part Of Harvest's Internal Operations.

Baker next argues that his "conduct was not in the course of trade or commerce as required by the UTPA" because it occurred during the course of his internal company responsibilities, rather than through his provision of a good or service. He acknowledges that the UTPA can apply to actions taken by a member of a company toward the company and concedes that he "abused his membership in the company and role as bookkeeper," thus breaching the operating agreement and his fiduciary duties. But he emphasizes that an action must be "an unfair, arms-length transaction" to be covered by the UTPA and that his fraud was not such a transaction. Duffus responds that Baker's contribution of services through DCI was an arms-length transaction.

We first distinguished between fiduciary and arms-length relationships for the purposes of applying the UTPA in *Alaska Interstate Construction, LLC v. Pacific Diversified Investments, Inc.*[27] In that case a member-manager of a limited company was convicted of self-dealing for fraudulently leasing two aircraft from a separate corporation he owned to the limited liability company that he operated (and partially owned).[28] We rejected the defendant's argument "that fiduciary and arms-length relationships are mutually exclusive."[29] Instead we concluded that "[e]ven where a party has a fiduciary relationship with a business entity, the UTPA can apply if the parties also engage in arms-length commercial transactions."[30]

In illustrating where to draw the line, we compared and contrasted two cases from the North Carolina Supreme Court, one ruling that state's version of the UTPA applied and one ruling that it did not. In the first an employee engaged in misconduct within the UTPA's scope by abusing his position to arrange for the purchase

---

[27] 279 P.3d 1156 (Alaska 2012).

[28] *Id.* at 1159-62.

[29] *Id.* at 1169-70.

[30] *Id.* at 1171.

of parts and services by his employer from his own companies.[31] We quoted the North Carolina court's characterization of the scheme as involving "buyer-seller relations in a business setting."[32] By contrast, in the second case, an employee's misconduct fell outside of the UTPA's scope when he funneled business intended for his employer to his own business.[33] We described that case as turning on that employee's breach of his fiduciary obligations to the company and placing "internal operations" beyond the UTPA's reach.[34]

Applying this reasoning to *Alaska Interstate*, we concluded that the aircraft leases were between two parties "act[ing] as separate entities in arms-length transactions."[35] We noted that the relationship between the parties "fit[] more closely" with the facts of the first case, where business entities were set up by an employee to provide his employer with services.[36] The UTPA therefore applied.[37]

This case presents an even closer call. It is true, as Baker emphasizes, that "there [wa]s no independent contract or agreement for third-party services" between Harvest and DCI. But on a motion for summary judgment, "[w]e review the facts in the light most favorable to the non-moving party and draw all factual inferences in the non-moving party's favor."[38] In this case Duffus alleged that it was Baker who

---

[31]     *Id.* at 1170-71; *see generally Sara Lee Corp. v. Carter*, 519 S.E.2d 308 (N.C. 1999).

[32]     *Alaska Interstate*, 279 P.3d at 1171; *Sara Lee*, 519 S.E.2d at 312.

[33]     *Alaska Interstate*, 279 P.3d at 1171; *see generally White v. Thompson*, 691 S.E.2d 676 (N.C. 2010).

[34]     *Alaska Interstate*, 279 P.3d at 1171; *White*, 691 S.E.2d at 680.

[35]     *Alaska Interstate*, 279 P.3d at 1171.

[36]     *Id.*

[37]     *See id.* at 1169-72.

[38]     *Achman v. State*, 323 P.3d 1123, 1126 (Alaska 2014) (quoting *Kalenka v. Jadon, Inc.*, 305 P.3d 346, 349 (Alaska 2013)).

proposed the bookkeeping arrangement. He also swore in his affidavit that Baker wrote unauthorized checks from Harvest to, among others, DCI. The record therefore supports the inference that Baker leveraged the existence of his own separate corporation to control and misappropriate Harvest funds — actions that "fit[] more closely" with an arms-length transaction than a purely internal breach of fiduciary obligations.[39] We conclude that the UTPA applies here as well.[40]

## V. CONCLUSION

We AFFIRM the superior court's denial of summary judgment.

---

[39] *Cf. Alaska Interstate*, 279 P.3d at 1171.

[40] We do not address Duffus's argument that Baker is estopped from raising his arguments, as it was not raised at trial.